# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ORANGELO PAYNE,** | ) | |
| **Plaintiff,** | ) | **Case No. 15 C 3154** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **COUNTY OF COOK, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Orangelo Payne alleges that while he was on intensive probation in April 2013 for a state drug possession offense, an FBI agent and probation officers found a shotgun during an illegal search of his home, which caused the Chicago police to arrest and imprison him in violation of federal and state law. More broadly, he contends that the search occurred because the Cook County probation office improperly partnered with other law enforcement agencies "to illegally go into probationers' homes without warrants to perform illegal searches and seizures, in an effort to persuade probationers[] to become informants and to obtain evidence unlawfully." (Am. Compl., Dkt. 8, ¶ 41.)

Payne filed a 22-count complaint against five defendants/groups of defendants, all of whom filed motions to dismiss: (1) the Chicago police officer defendants (Dkt. 48); (2) the Cook County defendants (Dkt. 64); (3) Jesus Reyes, the former Chief Probation Officer for the Cook County Adult Probation Department (Dkt. 66); (4) the City of Chicago (Dkt. 68); and (5) Christopher Weismantel, a special agent with the Federal Bureau of Investigation (Dkt. 70). For the following reasons, the motions to dismiss are granted in part and denied in part.[1]

---

[1] In Payne's consolidated response to the motions to dismiss, he indicates that he does not wish to pursue Counts XI – XX (excluding Counts XXI and XXII, which seek indemnification under state law). Thus, Count XI (state law civil conspiracy – all defendants),

## I. BACKGROUND[2]

### A.    The Parties

Plaintiff Orangelo Payne resides in Chicago, Illinois.  Defendant Cook County is a municipal corporation that, among other things, oversees the Cook County Adult Probation Department.  Defendant Lavone Haywood is the Chief Probation Officer for the Cook County Adult Probation Department.  Defendant Jesus Reyes is the former Chief Probation Officer for the Cook County Adult Probation Department, and was the Chief Officer during the relevant time period.  Defendant Phillippe Loizon is the Deputy Chief of the Cook County Adult Probation Department.  Defendants Marty Jahn, Mark Dovin, and Tom Diabiase are Probation Officers with the Cook County Adult Probation Department.  Defendant Timothy Evans is the Chief Judge of the Circuit Court of Cook County.  Payne has also sued the City of Chicago, Chicago Police Sergeant Chris Papaioannou, and Chicago Police Officers Marvin  Coleman,

---

Count XII (state law false imprisonment – adult probation department), Count XIII (state law false imprisonment), Count XIV (state law false imprisonment – FBI), Count XV (state law malicious prosecution – adult probation department), Count XVI (state law malicious prosecution – Chicago Police Department), Count XVII (state law malicious prosecution – FBI), Count XVIII (state law intentional infliction of emotional distress ("IIED") – adult probation department), Count XVIX (state law IIED – Chicago Police Department), and Count XX (state law IIED – FBI) are dismissed.  In addition, Payne's request to dismiss his claims against Dorothy Brown, Clerk of the Circuit Court of Cook County, is granted.

[2]  The following facts are drawn from the plaintiffs' 53-page amended complaint (Dkt. 8) and are accepted as true for the purpose of the defendants' motion to dismiss.  *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).  The court also notes that to resolve the various pending Rule 12(b)(6) motions, it has confined its attention to "allegations made within the four corners of the complaint" and will not consider additional factual allegations that the defendants have provided in the background sections of their motions.  *See*, *e.g.*, *Sumling v. Vill. of E. Dundee*, No. 14 C 3794, 2015 WL 5545294, at *5 (N.D. Ill. Sept. 18, 2015).  In addition, the court will not consider the numerous legal conclusions that are alleged as "facts" in the second amended complaint.

Angelo Panagiotopoulos, (unknown first name) Taylor, John Kennedy, Benny Williams, BJ Doherty, Stevan Vidljinoic, and (unknown first name) Dorin. FBI Special Agent Christopher Weismantel is the final defendant.

**B.     Payne's Arrest**

On April 21, 2013, Payne and Erica Lewis shared an apartment in Chicago's Grand Boulevard neighborhood. At the time, Payne was in the process of serving a two-year period of intensive state probation for drug possession and was required to be home every evening by 7:00 p.m.[3] Probation Officer Wayne Harris (not a defendant in this case) was Payne's assigned Probation Officer. Harris (or another probation officer) typically performed a weekly curfew check by calling Payne on the phone while parked outside Payne's apartment and asking Payne to come to a window to prove he was there.

Prior to April 21, 2013, no probation officer had entered Payne's apartment to conduct a curfew check. On the evening of April 21, 2013, however, three probation officers (defendants Marty Jahn, Mark Dovin, and Tom Dibiase) arrived at Payne's apartment, along with FBI Special Agent Christopher Weismantel. A probation officer called Payne on the telephone and

---

[3]  The Cook County defendants ask the court to take judicial notice of state court documents indicating that the conditions of Payne's probation required him to submit to searches of his person, home, and car when requested by a probation officer based on reasonable suspicion and to refrain from possession of firearms. They also ask the court to take judicial notice of the contents of a range of state court documents relating to Payne's performance while on probation, for the truth of the matters therein. The court, however, may only take "judicial notice of other judicial proceedings to establish the fact of such litigation or to recognize the outcome." *Lopez v. Pastrick*, No. 2:05-CV-452 PPS-APR, 2011 WL 2357829, at *4 (N.D. Ind. June 8, 2011). The court will take judicial notice of the state court documents for this limited purpose.

told him to come to the door. Payne let the probation officers and Special Agent Weismantel into his apartment, and one of the probation officers immediately handcuffed Payne.

Special Agent Weismantel showed Payne a picture of Paris Poe, a suspect in the shooting death of an FBI informant. After Payne denied knowledge of Poe's whereabouts, Special Agent Weismantel ordered the probation officers to search Payne's apartment. One of the probation officers found a vintage 12-gauge shotgun from 1905 in a closet in Lewis' bedroom. The probation officer called the Chicago Police Department, who sent police officers to arrest Payne. Payne alleges that he did not receive *Miranda* warnings and that no one told him why he was being arrested.

"The Adult Probation Department Defendants [Cook County, Timothy Evans, Lavone Haywood, Jesus Reyes, Phillippe Loizon, Marty Jahn, Mark Dovin, and Tom Dibiase] never documented [Special Agent Weismantel's] presence in [Payne's] file; such details were purposefully left out . . . so as to conceal [Special Agent Weismantel's] presence at [Payne's] home." (Am. Compl., Dkt. 8, ¶ 34.) When Payne arrived at the police station, he was placed into an interrogation room with Special Agent Weismantel and Chicago police sergeant Papaioannou (a defendant in this case). Special Agent Weismantel and Sergeant Papaioannou questioned Payne "on matters unrelated to his arrest, including interrogating him for information or intelligence regarding gang violence; specifically, knowledge of an alleged gang member by the name of Paris Poe." (*Id*. ¶ 35.) When Payne could not provide information about Poe, he was charged with unlawful possession of a firearm and as an armed habitual criminal. He spent

16 months in custody at the Cook County Jail before the State dropped the charges in July of 2014 and he was released.[4]

**C.      Payne's Claims**

Payne alleges that the Cook County Adult Probation Department, under the direction of Chief Judge Timothy Evans and through its then Chief Probation Officer Jesus Reyes, "created and effectuated a policy, custom, or practice in which the Adult Probation Department would team up with other law enforcement agencies, creating a joint task force which included the Chicago Police Department and the FBI, to illegally go into probationers' homes without warrants to perform illegal searches and seizures, in an effort to persuade probationers' [sic] to become informants and to obtain evidence unlawfully." (Am. Compl., Dkt. 8, ¶ 40.) According to Payne, the Chicago Police Department regularly visited probationers' homes as part of the joint task force. Payne alleges that in 2011 and 2012, the Adult Probation Department conducted two operations with the Chicago Police Department which included stops at more than 100 probationers' homes in the city of Chicago.

Deputy Chief Philippe Loizon is a probation officer who supervises the specialized weapons unit. Loizon and then Chief Probation Officer Jesus Reyes "buil[t] alliances with the Chicago Police Department and the FBI" so law enforcement officers could routinely search probationers' homes and attempt to obtain statements and evidence which would otherwise require the issuance of a warrant. After probation officers searched probationers' homes, they "would assist the Chicago Police Department and/or FBI in interrogating the probationer

---

[4]   Payne alleges that he was released on July 28, 2013. (Am. Compl., Dkt. 8, ¶ 38.) The court assumes that this is a typographical error and that Payne means July 28, 2014, as he alleges he spent sixteen months in custody beginning on April 21, 2013.

regarding individuals the Chicago Police Department, and/or the FBI sought information on. The Chicago Police Department and/or the FBI would then offer to suppress the evidence found during the illegal search in exchange for the probationer's information and/or agreement to become an informant."  (*Id.* ¶ 46.)

The Adult Probation Defendants (defined by Payne as Cook County, Timothy Evans, Lavone Haywood, Jesus Reyes, Phillippe Loizon, Marty Jahn, Mark Dovin, and Tom Dibiase) "promised special treatment and threatened to disrupt the probationers' lives if they refused to cooperate as informants."[5]  (*Id.* ¶ 47.)  "Members of the Adult Probation Department, together with the task forces including the Chicago Police Department and the FBI, planted drugs, money, firearms and other paraphernalia in probationers' homes if they refused to become informants." (*Id.* ¶ 48.)  Under the "task force" system, the Adult Probation Department "cultivat[ed] probationers to become informants, encouraging them to engage in illegal activity or to be close to illegal activities, when the purpose of the probationary program is to assist the probationer in improving their lives and reducing the chance they will reengage in criminal activity." (*Id.* ¶ 49.) "The Circuit Court of Cook County, through the Adult Probation Department and Jesus Reyes, deliberately failed to adequately keep records of misconduct to prevent patterns of misconduct from being established" and to conceal the misconduct of adult probation officers.  (*Id.* ¶ 51.)

The amended complaint repeats these allegations but directs them at the City of Chicago and the Chicago police officers named as defendants in this case.  Payne alleges that the City of

---

[5] Payne includes numerous allegations about groups of defendants.  It is unclear how Cook County – an entity – could itself threaten probationers.  The court also questions whether Payne intended to allege that Cook County Chief Judge Evans directly interacted with individual probationers as part of their monitoring.  This issue will be discussed more fully below.

Chicago did not investigate the police officer defendants' involvement with the task force and "deliberately failed to adequately keep records of misconduct, including failing to keep records of search and seizures performed in connection with 'curfew checks' of probationers" to conceal police misconduct." (*Id*. ¶¶ 65-66.) Payne further alleges that the City of Chicago "has a practice of condoning police misconduct and not disciplining officers who engage in misconduct. (*Id*. ¶ 67.)

As noted above, Payne elected not to proceed with most of the state law claims raised in his amended complaint. The allegations in the remaining counts do not necessarily track the count's title (for example, Count I is directed at the Adult Probation Department Defendants but contains allegations of purported wrongdoing by FBI Special Agent Weismantel). The court will not consider allegations about defendants who are not the named subjects of any given count. Similarly, the court will not consider allegations that are unrelated to each count's stated purpose (for example, allegations about a purportedly illegal search in a count labeled as an excessive force claim). This leaves the following claims:

1.      Excessive Force – Use of Handcuffs

      a.      Count I — § 1983 excessive force against the Adult Probation Department Defendants based on the use of handcuffs on Payne on the night his apartment was searched and an alleged policy, custom, and practice of creating and participating in the "task force." Payne also alleges that the individual probation office defendants are individually liable for restraining him.

      b.      Count II – § 1983 excessive force against the City of Chicago Police Department Defendants (defined by plaintiff as the City of Chicago, Sergeant Chris Papaioannou, Officer Marvin Coleman, Officer Angelo Panagiotopoulous, Officer Taylor, Officer John Kennedy, Officer Benny Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin) based on the facts underlying Count I and an alleged policy, custom, and practice of participating in the "task force." Payne also

alleges that the individual Chicago police officers are individually liable for restraining him.[6]

    c.    Count III – § 1983 excessive force against FBI Special Agent Weismantel based on his "order" to unspecified persons (presumably the probation officers) to detain Payne and search his person and apartment. (*Id.* ¶ 91.) In Count III, Payne also alleges that the FBI had a policy, custom, or practice of using excessive force and conducting illegal searches, which Payne describes as Weismantel's alleged use of force and involvement in the search of Payne's apartment, as well as a regime of encouraging FBI agents to "commit wrongful acts against [Payne]." (*Id.* ¶ 95.) Payne asserts that Count III is "brought pursuant to *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971)." (*Id.* ¶ 97.)

  2.    Unreasonable Seizure – Search of Payne's Person[7]

    a.    Count IV — § 1983 unreasonable seizure against the Adult Probation Department Defendants based on the defendant probation officers' search of Payne's person pursuant to a custom, policy, or practice of the Adult Probation Department.

    b.    Count V — This is a § 1983 unreasonable seizure against the Chicago Police Department Defendants that tracks Count IV, except it is directed at the City defendants and names the City as the purported author of the "task force" policy, custom, or practice.

    c.    Count VI – Another count that tracks Count IV, except it is directed at Weismantel. The alleged policy, custom, or practice in this count is carried out by "[t]he Defendant Circuit Court of Cook County, through the establishment of the Adult Probation Department, and as a policymaker for the Adult Probation Department, in conjunction with Defendant Jesus

---

[6] The court has summarized Payne's allegations as they appear. It notes that despite Payne's contention in the "factual allegation" portion of the complaint that a single probation officer handcuffed him, Counts I and II assert that the three defendant probation officers and the nine defendant Chicago police officers are each liable for violating Payne's constitutional rights by handcuffing him.

[7] As with Payne's excessive force counts, the unreasonable search counts include numerous allegations that relate to other constitutional theories, such as the alleged use of excessive force on the night that Payne was taken into custody. In future iterations of the complaint, Payne should refrain from this practice.

Reyes, also a policymaker for the Adult Probation Department." (*Id.* ¶ 119.)

3.  Unreasonable Seizure – Search of Payne's Apartment[8]

    a.  Count VII repeats Count IV against the Adult Probation Department
        Defendants but is based on the search of Payne's apartment as opposed to
        his person.

    b.  Count VIII repeats Count V against the Chicago Police Department
        Defendants but is based on the search of Payne's apartment as opposed to
        his person.

    c.  Count IX repeats Count VI against FBI Special Agent Weismantel but is
        based on the search of Payne's apartment as opposed to his person.

4.  § 1983 Conspiracy (Count X) – Against all defendants "jointly in concert, as
    co-conspirators, to create and effectuate the policies [the task force] which
    resulted in Defendants performing illegal searches, seizures, and interrogations of
    probationers, including Plaintiff Orangelo Payne." (*Id.* ¶ 164)

5.  State law indemnification claims against the Adult Probation Department
    Defendants (presumably, the individual defendants) (Count XXI) and the Chicago
    Police Department  Defendants (again, presumably, the individual defendants)
    (Count XXII).

## II. DISCUSSION

The court begins with Reyes' contention that Payne failed to effect service of process on

him in a timely manner.  It then will turn to the multiple motions to dismiss Payne's § 1983

claims.

## A. Official and Individual Capacity Claims Against Reyes

### 1. Service of Process

Reyes seeks to dismiss the official and individual capacity claims against him pursuant to

Rule 12(b)(5) based on untimely service of process.  The version of Rule 4(m) in effect when

---

[8] As with the other groups of counts, the counts based on the allegedly unreasonable
search of Payne's apartment contain allegations based on other constitutional theories.

Payne filed suit provided that if a plaintiff fails to effectuate service of process within 120 days after the complaint is filed, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

A court may, in an exercise of its discretion, find that good cause exists if the plaintiff has exercised "reasonable diligence" in attempting to effect service. *United States v. Veluchamy*, No. 11-CV-4458, 2015 WL 7351677, at *2 (N.D. Ill. Nov. 20, 2015); *see also Conwell v. Cook Cty.*, No. 12 C 10062, 2015 WL 4973086, at *6 (N.D. Ill. Aug. 18, 2015). Even if the court does not find good cause, it can dismiss the action without prejudice or in an exercise of its discretion, find that a permissive extension is warranted and order that service be made within a specified time. *Mikesell v. Taco Bell Corp.*, 300 F.R.D. 329, 331 (S.D. Ind. 2014) (citing *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008)). When exercising its discretion, the court should "pay particular attention to a critical factor such as the running of a statute of limitations," as well as whether the defendant evaded service, whether the defendant's ability to defend would be prejudiced by an extension, whether the defendant had actual notice of the lawsuit, and whether the defendant was eventually served. *Id*. (citing *Cardenas v. City of Chicago*, 646 F.3d 1001, 1007 (7th Cir. 2011)).

Payne contends that the "general appearances" filed on behalf of Reyes and the other Cook County defendants by attorneys with the Cook County State's Attorney's Office mean that Reyes "accepted service" of process. (Pl.'s Resp., Dkt. 89, at 48.) This is incorrect as "[n]either the filing of an appearance nor a Motion for Extension of Time to Answer waives the defense of

insufficient service of process so long as the defendant raises the defense in the first responsive pleading or in a pre-pleading motion." *Martin v. United States*, No. 3:13-CV- 03130, 2014 WL 3493233, at *3 (C.D. Ill. July 14, 2014). Thus, a defendant waives the defense of insufficient service of process by failing to raise it in its first responsive pleading or in a pre-pleading motion. *See* Fed. R. Civ. P. 12(h); *see also Swanson v. City of Hammond, Ind.*, 411 Fed. Appx. 913, 915 (7th Cir. 2011). As Reyes raised the defense of insufficient service of process in a Rule 12(b)(5) motion to dismiss, the filing of an appearance on his behalf does not result in waiver.

Next, Payne's counsel contends that Reyes' current counsel filed a separate appearance for Reyes before the 120-day period expired and did not advise her that he believed that his client had not been served. Payne's counsel may have felt lulled by the failure to bring the service issue to her attention but she has not provided any authority suggesting that defense counsel waives service by not reminding plaintiff's counsel that service has not been effected.

Nevertheless, a finding that a plaintiff "mistakenly believed the service of process was correct" can "weigh[] towards granting a permissive extension." *Goodman v. Clark*, No. 2:09 CV 355, 2010 WL 2838396, at *11 (N.D. Ind. July 12, 2010) (collecting cases). This is especially true when the plaintiff, as here, immediately attempts to rectify a service problem after realizing that she made a mistake. *See id*. Reyes does not dispute that he has been aware of this suit for a substantial period of time. The statute of limitations ran before Payne's counsel realized that she had not served Reyes properly. Reyes' claim that he will not be able to defend due to the late service is conclusory and belied by the fact that his private counsel contacted Payne's counsel before the 120-day period expired. Accordingly, in an exercise of its discretion, the court declines to dismiss the claims against Reyes based on Payne's counsel's error. The

time to effect service is extended retroactively to October 26, 2015, when an affidavit of service indicates that Reyes was served at his home.[9]  (Dkt. 88.)

### 2. Official Capacity Claims Against Reyes

Payne sued Reyes in his capacity as the "prior Chief Probation Officer for the Cook County Adult Probation Department . . . acting as Chief Officer during the relevant time period alleged in the instant complaint."  (Am. Comp., Dkt. 8, ¶ 6.)  Payne has also sued the current holder of that office, Levonne Haywood.  Reyes moves to dismiss the official capacity claims against him, arguing that he ceased serving as Chief Probation Officer almost a year before this lawsuit was filed in April 2015.

A public officer's successor is automatically substituted when that officer ceases to hold office while an action is pending. Fed. R. Civ. P. 25(d).  Reyes, however, was never the Chief Probation Officer while this action was pending.  Thus, Rule 17 ("Plaintiff and Defendant; Capacity; Public Officers"), rather than Rule 25 ("Substitution of Parties"), governs.  *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice & Procedure § 1958 (3d ed. 2010).  Rule 17 allows suits against public official defendants to proceed against either the official's title or his name. Fed. R. Civ. P. 25(d).  The court has been unable to locate any authority suggesting that it is possible to sue a former public official in his official capacity, and Payne does not address this point.

An action against a defendant in his official capacity is, in essence, an action against the governmental entity of which the official is an agent. *Monell v. Dept. of Social Services*, 436

---

[9]  Given the affidavit of service, it is unclear why Reyes contends that "[t]o date, service has not been effected on Jesus Reyes individually."  (Reyes' Mot. to Dismiss, Dkt. 66, at 3.)

U.S. 658, 690 n. 55 (1978).  To the extent that a plaintiff sues a former public officer based on his actions taken while holding his former office, at best, it appears that this would be an individual capacity claim.  The official capacity claims against Reyes are dismissed.  The court will discuss the individual capacity claims against Reyes below.

**B.     Motion to Dismiss Based on Multiple Immunity Doctrines**

The Probation Department Defendants contend that all of their immunity arguments, if accepted, would divest this court of jurisdiction.  Dismissal of a claim based on sovereign immunity is based on the failure to state a claim for relief, not the absence of jurisdiction. *Abdulqader v. United States*, 596 F. App'x 515, 516 (7th Cir. 2015).  As to the other immunity defenses, the result is the same under Rule 12(b)(1) (jurisdiction) and Rule 12(b)(6) (failure to state a claim), as when considering both types of motions, the court accepts the plaintiff's allegations as true and views all facts and reasonable inferences in the light most favorable to the plaintiff.  *Ocean Tomo, LLC v. Barney*, No. 12 C 8450, 2014 WL 2619505, at *3 (N.D. Ill. June 12, 2014) (citing *Scott Air Force Base Props. v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 519 (7th Cir. 2008)).  "The standard for a Rule 12(b)(1) motion to dismiss differs from that governing a Rule 12(b)(6) motion only in that the court 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Id*. (quoting *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

**1.     Judicial Immunity**

The defendants assert that Timothy Evans (the Chief Judge of the Circuit Court of Cook County) is entitled to absolute judicial immunity and Jesus Reyes (former Chief Probation

Officer for the Cook County Adult Probation Department), Lavone Haywood (Chief Probation Officer for the Cook County Adult Probation Department), Phillippe Loizon (Deputy Chief of the Cook County Adult Probation Department), and Marty Jahn, Mark Dovin, and Tom Dibiase (Probation Officers with the Cook County Adult Probation Department) are entitled to quasi-judicial immunity.

### a.    Absolute Judicial Immunity

"The doctrine of judicial immunity has been embraced 'for centuries.'" *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005) (quoting *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985)).  "It confers complete immunity from suit, not just a mere defense to liability," and is available in actions seeking relief under § 1983.  *Id.*  Judges enjoy absolute judicial immunity in civil rights actions for damages when (1) the challenged act is judicial in nature, as opposed to ministerial or administrative and (2) the judge had subject matter jurisdiction over the case in which he took the challenged act.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 360-64 (1978).

### i.    Chief Judge Evans — Official Capacity

When a defendant is sued in his official capacity, "the only immunities available . . . are those that may be asserted by the governmental entity itself (*e.g.*, Eleventh Amendment immunity or sovereign immunity)."  *Novak v. Hall*, No. 14 C 801, 2015 WL 5768569, at *5 (N.D. Ill. Sept. 30, 2015) (quoting *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996)).  "This is due to the fact that official capacity suits against government officers or public officials are actually claims against the government entity for which the officers work."  *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Prakel v. Indiana*, 100 F.

Supp. 3d 661, 677 (S.D. Ind. 2015) ("judicial immunity is a personal defense reserved for individuals").  Thus, the court declines to find that absolute judicial immunity bars Payne's § 1983 official capacity claims against Chief Judge Evans.[10]

### ii.    Chief Judge Evans — Individual Capacity

As noted above, non-judicial actions are not entitled to the protection of absolute judicial immunity.  *Mireles*, 502 U.S. at 11-12.  "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* (citing *Stump*, 435 U.S. at 362); *Forrester v. White*, 484 U.S. 219, 223-24 (1988) (" Running through our cases, with fair consistency, is a 'functional' approach to immunity questions" that requires the court to "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted" and "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions").

"[A] judge, and particularly a chief judge, has many administrative duties that which are part of his normal function, and no less judicial than the act of presiding over a courtroom." *Primm v. Cty. of Dupage*, No. 92 C 3726, 1993 WL 338762, at *6 (N.D. Ill. Sept. 2, 1993) (quoting *Illinois Traffic Court v. Peoria Journal Star*, 494 N.E.2d 939, 941-42 (Ill. App. Ct.1986)).  Payne has sued Chief Judge Evans because "he oversees the Adult Probation

---

[10]  This ruling applies equally to Payne's official capacity claims against the individual probation officers and their supervisors, all of whom contend that they are entitled to quasi-judicial immunity.

Department."[11]  (Am. Compl., Dkt. 8, ¶ 9.)  This oversight function flows from Chief Judge

Evans' status as Chief Judge; it is not an "administrative, legislative, or executive function[] that

judges may on occasion be assigned by law to perform," such as a decision to terminate a staff

member's employment.  *See Mireles*, 502 U.S. at 13; *see also Forrester*, 484 U.S. at 544.  Chief

Judge Evans is entitled to absolute immunity against the claims brought against him in his

individual capacity.

### b.    Quasi-Judicial Immunity

The Adult Probation Defendants next argue that the three probation officers who went to

Payne's apartment on April 21, 2013 (Marty Jahn, Mark Dovin, and Tom Dibiase) and their

supervisors, Jesus Reyes (former Chief Probation Officer for the Cook County Adult Probation

Department), Phillippe Loizon (Deputy Chief of the Cook County Adult Probation Department),

and Lavone Haywood (Chief Probation Officer for the Cook County Adult Probation

Department), are entitled to quasi-judicial immunity.  Payne concedes that probation officers are

"judicial employees" under Illinois law.  *See People v. Keller*, 926 N.E.2d 890, 895 (Ill. App. Ct.

2010) (citing 730 Ill. Comp. Stat. § 110/9b(3)).  He nevertheless contends that the probation

officer defendants and their supervisors are not entitled to quasi-judicial immunity.

### i.    The Three Probation Officers

Payne's claims against the three probation officers are based on the in-home curfew

check (presumably as opposed to a check where an officer would instruct Payne to present

---

[11]  Payne also contends that Chief Judge Evans "created and effectuated" the de facto
policy.  (Am. Comp., Dkt. 8, ¶ 40.)  This allegation is conclusory as it is unaccompanied by any
supporting factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).
Similar conclusory allegations directed at Loizon and Haywood are discussed below.

himself at a window), their use of handcuffs, the search of his person and apartment, and the seizure of the gun found in a closet. He contends that quasi-judicial immunity does not protect the probation officers' performance of these acts. With respect to the curfew checks, Payne does not dispute that curfew checks were a condition of his probation or that probation officers perform curfew checks regularly "in the course of their everyday duties." (Pl.'s Resp., Dkt. 80, at 17.) However, he argues that curfew checks are not "intimately associated with the judicial process" because "performing a curfew check does not involve decision-making that is 'adjudicative' or 'judicial' in nature." (*Id*.)

"[O]fficials whose functions are further removed from the core dispute resolution function of judges, but are taken pursuant to the explicit direction of a judicial officer," are entitled to quasi-judicial immunity. *Bernegger v. Morrissette*, No. 08-C-977, 2009 WL 911394, at *5 (E.D. Wis. Mar. 31, 2009). Since it is undisputed that the probation officers performed the curfew check as a condition of Payne's probation, their actions appear to be protected by quasi-judicial immunity. On the other hand, the Seventh Circuit has cautioned that probation officers are not "entitled to absolute immunity for performing their day-to-day duties in the supervision of a parolee" because "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (internal quotations omitted).

Thus, a parole officer who fails to investigate a parolee's claim that he is entitled to termination of his parole is not entitled to quasi-judicial immunity, but an officer who makes a decision about granting, revoking, or denying parole or signing an arrest warrant is covered because those actions are judicial in nature. *Id*. The authority cited by the Adult Probation

Defendants (Cook County Resp., Dkt. 64, at 11-12) all relates to the former types of actions. Moreover, conducting curfew checks is more analogous to the day-to-day duty of responding to inquires from supervisees than making decisions about parole or arrest warrants. Thus, the court finds that the three probation officers are not entitled to quasi-judicial immunity based on their performance of a curfew check on Payne on April 21, 2013.

The court next turns to the probation officers' use of handcuffs, search of Payne's person and apartment, and the seizure of the gun. When probation officers engage in "investigative or administrative functions" that are "akin to duties performed by police officers, [they] are entitled only to qualified, not absolute, immunity." *Johnson v. Root*, 812 F. Supp. 2d 914, 922 (N.D. Ill. 2011) (citing *Wilson v. Kelkhoff*, 86 F.3d 1438, 1446 (7th Cir. 1996)); *Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) ("A parole officer enjoys absolute immunity for issuing an arrest warrant against a parolee so long as she does not participate in gathering the evidence forming the basis of the warrant."). Using handcuffs, conducting a search and seizing a gun are evidence-gathering functions similar to functions performed by police. Absolute quasi-judicial immunity does not bar Payne's claims against the three probation officers based on the search of his apartment and the seizure of the gun.

## ii.    The Supervisory Probation Officers

Supervisory probation employees Jesus Reyes, Lavone Haywood, and Phillippe Loizon also contend that they are entitled to quasi-judicial immunity. The court disposes of the claims against them on alternative grounds; its ruling applies equally to Chief Judge Evans.

Haywood is a defendant because she stepped into Reyes' shoes when he left his position as Chief Probation Officer for the Cook County Adult Probation Department. Payne alleges

generally (in a variety of repetitive and substantively similar ways) that Loizon supervised the specialized weapons unit and, along with Reyes, "effectuated the Adult Probation Department Department's policy, custom, or practice, by building alliances with the Chicago Police Department and the FBI and routinely performing warrantless unlawful searches and seizures into probationers' homes."  (Am. Compl., Dkt. 8, ¶¶ 43-45, 49.)  "As a result of the policy, custom, or practice created by Loizon and Reyes [*i.e.*, not due to their personal actions], the Adult Probation Department obtained several confidential informants for the FBI and the Chicago Police Department."  (*Id.* ¶ 49.)

It is unclear if Payne intended to allege that Loizon and Reyes—who are supervisors— routinely performed searches and seizures themselves.  In any event, the allegations against the supervisors are all legal conclusions that are not supported by any specific factual allegations. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To state a claim against the supervisory probation defendants, Payne must "provide some factual content to make these conclusory allegations both relevant and plausible."  *Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *4 (N.D. Ill. Oct. 22, 2015).  He has not done so.

The lack of specifics makes it impossible to analyze whether the supervisory probation defendants are entitled to immunity.  It is true that "the facts required to defeat immunity are not required at the pleading stage."  *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *5 (N.D. Ill. Sept. 2, 2015).  However, this rule does not insulate a plaintiff from the requirement that he provide a framework of basic facts that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555-56.  Payne has failed to do so.  Accordingly, while

recognizing that "questions of immunity should be decided at the earliest possible stage," *Wagner v. Evans*, No. 15-CV-6165, 2016 WL 397444, at *4 (N.D. Ill. Feb. 2, 2016), the court dismisses the claims against the supervisory probation defendants with leave to replead. In re-pleading, Payne should be cognizant of the fact that the length of an amended complaint is not necessarily indicative of the quantity or quality of the factual allegations in that document. Repeating conclusory allegations multiple times is unhelpful.

### 2. Sovereign Immunity Pursuant to the Eleventh Amendment

Under the Eleventh Amendment, a state, its agencies, and its officials acting in their official capacities are immune from federal lawsuits unless the state consents to the suit or Congress abrogates the state's immunity. *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). There is no exception to state sovereign immunity for § 1983 claims. *Quern v. Jordan*, 440 U.S. 332 (1979). Nevertheless, "a suit for prospective injunctive relief (though not money damages) may proceed against state officials in limited circumstances, as outlined in *Ex Parte Young*, 209 U.S. 124 (1908)." *Meyers v. S. Illinois Univ.-Carbondale ex rel. Koropchak*, No. 08-CV-0556-MJR, 2009 WL 2046061, at *2 (S.D. Ill. July 10, 2009). In addition, a plaintiff may pursue claims for money damages "against a state official sued in his individual capacity (as opposed to his official capacity) for wrongful conduct attributable to the official himself, 'so long as the relief is sought, not from the state treasury but from the officer personally.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)).

### a.    Sovereign Immunity — Cook County

Payne's definition of the "Adult Probation Department Defendants" includes Cook County.  The federal counts against the "Adult Probation Department Defendants" (Counts I, IV, and VII), however, seem to be directed at individuals, not Cook County.  States and their departments are not "persons" within the meaning of § 1983 and thus cannot be held liable under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Alden*, 527 U.S. at 736.  Thus, the court will assume that Payne is not attempting to assert § 1983 claims against Cook County.

### b.    Sovereign Immunity – Individual Cook County Defendants

Payne has sued the individual Cook County defendants in their official and individual capacities.

### i.    Official Capacity Claims

"Official capacity suits are a way of suing the governmental entity of which the defendant official is an agent."  *Kaszuba v. Godinez*, No. 14-CV-00952-JPG, 2015 WL 5935216, at *2 (S.D. Ill. Oct. 13, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Liability in an official capacity action flows from the execution of an official policy, practice or custom by a government official.[12]  *Id.*  Payne concedes that he cannot recover monetary damages from County employees sued in their official capacities.  *See*, *e.g.*, *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (sovereign immunity bars claims for money damages sought from state officials in their official capacities).  He also concedes that the Division of Probation Services,

---

[12]  The Probation Department Defendants contend that Payne has failed to allege facts sufficient to show that a policy, practice or custom existed.  This argument is discussed below.

established by the Illinois Supreme Court, reimburses Cook County for the cost of Cook County probation officers' salaries and does not appear to dispute that Chief Judge Evans is a state employee. He nevertheless argues that the individual Adult Probation Department Defendants are employed by Cook County – not the State of Illinois – and thus are not state officials who can take advantage of Eleventh Amendment sovereign immunity.

In response, the probation defendants argue that they are state officers because they serve in the state court system and are appointed by and under the control of the Chief Judge of each county in Illinois. Although probation officer-specific authority is sparse, one court has held that "[f]or state law purposes judicial branch employees (presumably including probation officers) are not subject to claims that the chief judges and the counties are their joint employers" as the State of Illinois employs judicial branch employees. *Cobb v. Cty. of Cook*, 179 F.R.D. 222, 223-24 (N.D. Ill. 1998) (citing *Orenic v. Illinois State Labor Relations Bd.*, 455, 537 N.E.2d 784, 794-800 (Ill. 1989)).

Payne does not provide any analysis of whether Cook County probation staff acts on behalf of the State versus Cook County. (Pl.'s Resp., Dkt. 89, at 8.) The court will not develop and research arguments for him. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"). Given the authority cited above indicating that Cook County probation officers are state employees, sovereign immunity is available to them. This bars Payne's claims for money damages against the probation officers.

Payne contends that he may still proceed with official capacity claims to "challenge the constitutionality of the Department's policies and seek injunctive relief." (Pl.'s Resp., Dkt. 89,

at 8-9.)  The Probation Department Defendants do not appear to challenge this point in their reply.[13]  The court may award injunctive relief against state officials sued in their official capacities.  *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) (under the *Ex Parte Young* doctrine, "state officials may be sued in their official capacity for injunctive relief against violations of federal law, including of course nonconstitutional as well as constitutional violations"); *Rasche v. Lane*, No. 15 C 7918, 2015 WL 8493994, at *5 (N.D. Ill. Dec. 8, 2015) ("while the Eleventh Amendment bars damages claims against the state, its agencies, and its officials acting in their official capacities, it does not preclude claims against state officials for injunctive relief requiring them to comply with federal law").  Thus, the Eleventh Amendment does not bar Payne's request for injunctive relief.

### ii.  Individual Capacity Claims

The Probation Department Defendants contend briefly that "claims against individual office holders are considered claims against the state, even when the officials are sued in the [sic] individual capacities."  (Defs.' Memo., Dkt. 64, at 7.)  Payne (understandably) interprets this as an argument that there is no such thing as a claim against a state actor in her individual capacity and disagrees with that argument.  In reply, the Probation Department Defendants defend their request to dismiss the individual capacity claims against Deputy Chief of the Cook

---

[13]  Confusingly, the Probation Department Defendants state that they "recognize that the Eleventh Amendment does not bar injunctive suits against states which challenge the constitutionality of a state official's action; however, Plaintiff fails to state a claim against Defendants Haywood, and Loizon in their official capacities."  (Defs.' Reply, Dkt. 108, at 6.) The Probation Department Defendants then engage in a lengthy discussion that appears to correspond to the *Monell* liability section of their opening brief (Defs.' Memo, Dkt. 64, at 19-21).  Thus, the defendants do not appear to challenge the availability of injunctive relief sought against probation employees sued in their official capacities.

County Adult Probation Department Liozon and do not mention the individual capacity claims against the three probation officers who visited Payne's apartment. (Defs.' Reply, Dkt. 108, at 9.)

It appears that the Probation Department Defendants do not seek to dismiss the individual capacity claims against the probation officers based on sovereign immunity. Instead, they seem to be challenging the individual capacity claims against supervisory employees in the Probation Department. A § 1983 suit against an individual state actor sued in her personal capacity based on allegations of personal involvement in the denial of a constitutional right is not subject to the state sovereign immunity bar. *See*, *e.g.*, *Parker v. Illinois Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *7 (N.D. Ill. Oct. 25, 2013) (citing *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012)). Based on this principle and because the Probation Department Defendants have not mounted an understandable challenge to the individual capacity § 1983 claims against them, the Eleventh Amendment does not bar those claims.

### 3. Qualified Immunity

The court next considers if qualified immunity bars Payne's surviving claims against the Cook County defendants. Special Agent Weismantel has adopted the Cook County defendants' arguments about qualified immunity and also moves to dismiss on grounds that are specific to him.

### a. Legal Standard for Qualified Immunity

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*,

267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It

"gives government officials breathing room to make reasonable but mistaken judgments about

open legal questions."  *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v.

al-Kidd*, 563 U.S. 731, —, 131 S.Ct. 2074, 2085 (2011)).  When evaluating whether qualified

immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light

most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that

constitutional right was clearly established at the time of the alleged violation."  *Alvarado*, 267

F.3d at 652; *see also Lane*, 134 S.Ct. at 3281.

> **b.** **Qualified Immunity — Cook County Defendants and Special Agent Weismantel**

Citing to *Johnson v. Root*, the Cook County defendants contend that probation officers

are entitled to qualified immunity when they perform "investigative or administrative functions

. . . akin to duties performed by police officers."[14]  812 F. Supp. 2d at 922.  This argument rests

on a misreading of *Johnson*, which holds that "qualified, not absolute, immunity" is *available* in

that situation.  *Id*.  Johnson does not hold that qualified immunity automatically applies.  *Id*.

Thus, the court considers if qualified immunity protects the probation officers who went

to Payne's apartment on April 21, 2013.[15]  The probation officers agree that the conditions of

---

[14]  Special Agent Weismentel adopted the Cook County defendants' qualified immunity arguments.  Thus, in this section, references to the Cook County defendants also encompass Special Agent Weismantel.

[15]  The remaining Cook County defendants (Chief Judge Evans, Haywood, and Loizon) assert that they "were not present during the April 21, 2013 occurrence and are only identified in their supervisory and/or elected roles related to the Cook County Adult Probation Department." (Defs.' Memo., Dkt. 64, at 17.)  They appear to be claiming the protection of qualified immunity based on their lack of personal involvement with the search.  *See Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (liability can attach only if a defendant is personally involved in the

Payne's probation required them to have reasonable suspicion to perform warrantless searches of Payne's person and apartment. (Defs.' Memo., Dkt. 89, at 22.) For the purpose of its qualified immunity analysis at the motion to dismiss stage, the court must accept Payne's allegation that the officers, who were at the apartment solely to conduct a curfew check, had no justification whatsoever for immediately handcuffing Payne and searching his person and the apartment and, instead, used the curfew check to gain access to the apartment to conduct an unlawful search. Payne's allegation that there was no basis for reasonable suspicion appears to doom the request for qualified immunity.

The probation officers, however, assert that "the doctrine of qualified immunity leaves ample room for mistaken judgments," *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006), so "in grey areas where probable cause (or reasonable suspicion) may be questionable, the benefit falls to the law enforcement agent," *Colbert v. Willingham*, No. 13-CV-2397, 2015 WL 3397035, at *7 (N.D. Ill. May 26, 2015); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials—like other officials who act in ways they reasonably believe to be lawful— should not be personally liable."). "Reasonable suspicion is less demanding than probable cause (which itself is a quantum of proof less than a preponderance of the evidence)." *Pike v. Foster*, No. 12

_____

constitutional deprivation). However, Payne's theory as to these defendants is that they were personally involved in the creation and implementation of a custom, policy, and practice that deprived him of his constitutional rights. This subset of the Cook County defendants does not appear to be claiming qualified immunity based on this theory.

CV 00094, 2016 WL 537940, at *4 (N.D. Ill. Feb. 11, 2016) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

The probation officers assert that a state court judge found that the defendant officers had probable cause to arrest Payne after seizing the gun in his apartment and that Payne was found in violation of the terms of his probation the day before the curfew check at issue. They suggest that this makes the existence of reasonable suspicion at least questionable.[16] The court disagrees.

To evaluate the parties' arguments about the existence of reasonable suspicion, the court turns to analogous cases addressing probable cause. "[A]n officer is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed based on the clearly established law at the time of his actions." *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015) (internal quotations omitted). This is sometimes referred to as "arguable probable cause," the determination of which should be made separately and distinctly from a determination of actual probable cause. *Id.* If an officer "reasonably, albeit possibly mistakenly, believed that probable cause existed," he is entitled to qualified immunity. *Id.*

"Police ordinarily have probable cause if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wagner v. Wash. Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The court assesses probable cause objectively, considering the facts as they reasonably appeared to the

---

[16] As noted above, at the motion to dismiss stage, the court cannot accept the contents of the state court materials submitted by the defendants for the truth of the matter therein. Nevertheless, in the interests of completeness, the court will address the defendants' argument.

arresting officer, "seeing what he saw, hearing what he heard, and so forth." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction. *Id*. "Based as it is on probabilities rather than hard certainties, the probable-cause standard inherently allows room for reasonable mistakes." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). When facts sufficient to create probable cause are undisputed, probable cause is a question of law. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999), overruled on other grounds by *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 1999).

The probation officers' argument about reasonable suspicion/probable cause, in essence, is that a court determined that probable cause supported Payne's arrest based on the gun found in his apartment. (Defs.' Memo., Dkt. 64, at 16.) This does not engage with the authority discussed above as it is based on post-search developments and is at odds with the Seventh Circuit's mandate to consider "arguable probable cause" separately and distinctly from actual probable cause. *See Burritt*, 807 F.3d at 250. Moreover, at the motion to dismiss stage, the court must accept Payne's allegations about the probation officers' motivation for entering his apartment and, as discussed above, cannot consider materials from the state court criminal case for the truth of the matter therein. The parties agree that the conditions of Payne's probation allowed the probation officers to search Payne's person and apartment if a reasonable suspicion justified the search. Payne alleges that the probation officers could not have had a reasonable suspicion that he had violated the terms of his probation because they were there solely to conduct a curfew check and his presence demonstrated he was in compliance.

At the motion to dismiss stage, the court cannot make factual findings about the officers' reasons for entering Payne's apartment. Instead, it is bound by Payne's allegations. So for now, the probation officers are not entitled to qualified immunity. This is not a final ruling as a more fully developed record may show that the probation officers had a different reason for searching Payne's person and apartment.

### c.    Qualified Immunity — Special Agent Weismantel

The court next considers qualified immunity arguments that are specific to Special Agent Weismantel. "*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers." *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005); *see also Bush v. Lucas*, 462 U.S. 367, 374 (1983) (*Bivens* is the federal counterpart to a § 1983 claim against a state official). Because § 1983 actions and *Bivens* claims "are conceptually identical and further the same policies, courts have frequently looked to [§ 1983] and [its] decisional gloss for guidance in construing the scope of the *Bivens* remedy." *Reynolds v. United States*, No. 15-CV-00262-NJR, 2016 WL 51389, at *3 (S.D. Ill. Jan. 5, 2016) (quoting *Green v. Carlson*, 581 F.2d 669, 673 (7th Cir. 1978)).

As noted above, Payne alleges that the probation officers acted pursuant to an agreement between the Cook County Adult Probation Department, the Chicago police, and the FBI. According to Payne, Special Agent Weismantel entered his apartment with three Cook County probation officers. Special Agent Weismantel showed Payne a picture of Paris Poe, an alleged gang member who was a suspect in the shooting death of an FBI informant. After Payne denied knowledge of Poe's whereabouts, Special Agent Weismantel "then illegally authorized the

Probation Officers to 'search the place'" and the probation officers searched Payne's apartment. (Am. Compl., Dkt. 8, ¶ 28.)  Payne also alleges that Special Agent Weismantel and Chicago Police Sergeant Chris Papaioannou "interrogated" him after he arrived at the police station and contends that he was charged only after he could not provide information about Poe.  (*Id.* ¶¶ 35-36.)  Special Agent Weismantel seeks to dismiss Counts III (excessive force), VI (search of Payne's person), and IX (search of Payne's apartment) pursuant to the doctrine of qualified immunity.

### i. Special Agent Weismantel — Excessive Force (Count III)

Payne's 246-paragraph amended complaint does not appear to allege that Special Agent Weismantel ever touched him.  In the background section of his amended complaint, Payne alleges that "one of the Probation Officers" handcuffed him immediately after the officers and Special Agent Weismantel entered Payne's apartment.  (Am. Compl., Dkt. 8, ¶ 26.)  In his excessive force count against Special Agent Weismantel, Payne adds that Special Agent Weismantel "ordered the detention of Orangelo Payne [*i.e.*, ordered a probation officer to apply handcuffs]."  (*Id.* ¶ 91.)  It is unclear how a probation officer could have simultaneously decided to handcuff Payne immediately upon entering the apartment *and* waited for Special Agent Weismantel to provide directions.  Payne may not proceed based on these inconsistent and confusing allegations.  *See Karney*, 2015 WL 6407759, at *4.  Thus, Count III is dismissed. Because Payne at this point has not stated a colorable excessive force constitutional claim, the court will not consider Special Agent Weismantel's qualified immunity defense.  *See Alvarado*, 267 F.3d at 652.

### ii. Special Agent Weismantel — Search of Payne's Person (Count VI)

In Count VI, Payne does not allege that Special Agent Weismantel participated in the search of Payne's person or in any other way was directly involved. The closest allegation regarding Special Agent Weismantel's involvement in a search is his purported command for the probation officers to "search the place," which focuses on Payne's apartment, not his person. Payne has pointed to no authority suggesting that Special Agent Weismantel can be vicariously liable for a search of Payne's person performed by Cook County probation officers based on Special Agent Weismantel's presence in Payne's apartment. Count VI is dismissed; as with Count III, this means that the court need not reach Special Agent Weismantel's contention that he is entitled to qualified immunity as to this count.

### iii. Special Agent Weismantel — Search of Payne's Apartment (Count IX)

With respect to Payne's claim against Special Agent Weismantel based on the search of Payne's apartment (Count IX), Special Agent Weismantel asserts that he lacks authority to order a Cook County probation officer to conduct a search incident to a curfew check so he cannot be held responsible for the probation officers' search of Payne's apartment. Special Agent Weismantel also contends that Payne is attempting to impose liability on him merely because he was present at Payne's apartment on the night at issue.

The court, as it must at this stage of the proceedings, accepts Payne's allegations as true. Regardless of Special Agent Weismantel's authority to issue orders to Cook County probation officers, Payne has alleged that Special Agent Weismantel gave a command that the probation officers obeyed. In other words, Payne alleges that the search of his apartment happened because Special Agent Weismantel ordered the probation officers to "search the place." This allegation, coupled with Payne's allegations about the agreement between County, City, and

federal law enforcement, supports an inference that the probation officers searched Payne's apartment at Special Agent Weismantel's behest. Thus, while discovery may belie Payne's allegations, Count IX states a claim for which relief may be granted.

Because Payne has stated a colorable claim against Special Agent Weismantel, the court considers if he is entitled to qualified immunity. As Special Agent Weismantel notes, the "right question is whether the officers could have reasonably believed that their actions were lawful." (Weismantel Reply, Dkt. 105, at 4.) Special Agent Weismantel argues that given Payne's status as a probationer and the fact that Special Agent Weismantel was not involved with monitoring Payne's probation, it would not be immediately apparent that Payne had consented to a search of his apartment only if reasonable suspicion existed, since probation agreements commonly include blanket waivers that allow inspection of a residence at any time for any reason.

Payne's response does not engage with this argument. However, Special Agent Weismantel's qualified immunity argument fails for two reasons. First, even accepting Special Agent Weismantel's contention that he reasonably believed that Payne had signed a blanket consent-to-search, Special Agent Weismantel does not assert that he had a reasonable albeit mistaken belief that Payne consented to a search that was purportedly initiated by an FBI agent, as opposed to a Cook County Adult Probation officer.

Second, Special Agent Weismantel was in the apartment solely because he accompanied the probation officers. The court is not aware of any authority suggesting that law enforcement officer X can enter and then search a residence because law enforcement officer Y had a colorable basis for gaining access to the residence and X accompanied Y. That is precisely what Payne has alleged. Special Agent Weismantel has not explained why he had a reasonable but

mistaken belief that he could use the probation officers to gain entry into Payne's apartment so he could question Payne about Poe and then (accepting Payne's allegations), order a search of the apartment after Payne disclaimed knowledge of Poe.  This is not a grey area of the law.  *See Gutierrez*, 722 F.3d at 1008.  Special Agent Weismantel's motion to dismiss Count IX based on the doctrine of qualified immunity is denied.

## C.      Conspiracy (Count X)

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.'"  *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).  To state a claim for conspiracy claim pursuant to § 1983, a plaintiff "must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights."  *Id*.

### 1.      Cook County Defendants & Chicago Police Defendants

A plaintiff may attach materials to a response to a motion to dismiss that illustrate the facts that he expects to be able to prove.  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  In response to the Cook County defendants' motion to dismiss Payne's conspiracy claim (which the Chicago police defendants adopted), Payne submitted a group of exhibits that he expressly states are illustrative, including a May 21, 2014 Cook County Court press release announcing that Chief Judge Evans hired an independent law firm to conduct an internal investigation to address "allegations that high ranking officials in the Adult Probation Department improperly cooperated in searches of probationers' homes with local and federal law enforcement agencies" (Dkt. 89-1) and various newspaper articles that are consistent with the

allegations in the amended complaint regarding an alleged agreement between Cook County, the City of Chicago, and the FBI. (Dkt. 89-2 to 89-5). For example, the articles assert that Loizon "built alliances with police and the FBI, at times over his bosses' objections," probation officers regularly visit probationers' homes with Chicago police officers and FBI agents, Loizon had personal ties to probationers acting as informants, and that the Cook County Probation Department lacks guidelines for engaging in the type of search and seizure at issue in this case. (Dkt. 89-2.)

The Cook County defendants (and, by adoption, the Chicago police defendants) do not address the substance of these materials. Instead, they merely repeat the well-established rule that a plaintiff may not amend his complaint in response to a motion to dismiss. Payne has not attempted to do so. His allegations about the alleged civil conspiracy (like many of his allegations) are sweeping, but the illustrative materials provide color and support and, as such, may be considered as exemplars of the types of evidence he believes supports his conspiracy claim. He may proceed with this claim against the Cook County and Chicago police defendants.

### 2. Special Agent Weismantel

"[I]t is well settled that conspiracy does not provide an independent basis of liability." *Ellis v. City of Chicago*, No. 13 CV 2382, 2016 WL 212489, at *10 (N.D. Ill. Jan. 19, 2016). Thus, a conspiracy claim must rest on a colorable claim of an underlying constitutional violation. *Id.* (quoting *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) ("For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights," as "there is no constitutional violation in conspiring to cover up an action which does not itself violate the constitution"). Special Agent Weismantel adopts the Cook County defendants'

arguments about § 1983 conspiracy, which are discussed above.  He also adds that the conspiracy claim against him should be dismissed because Payne has not stated a colorable underlying constitutional claim against him.  As the court has denied the motion to dismiss Count IX (search of Payne's apartment as to Special Agent Weismantel), this argument is unavailing.

### 3.        The City of Chicago

An entity is not a person and thus cannot conspire with others to violate a citizen's constitutional rights.  *Briggs v. N. Shore Sanitary Dist.*, 914 F. Supp. 245, 251 (N.D. Ill. 1996). The conspiracy claim against the City of Chicago is, therefore, dismissed with prejudice.

## D.        Motion to Dismiss Payne's *Monell* Claims[17]

### 1.        *Monell* Claims – Custom, Policy, and Practice

Payne contends that Cook County and the City of Chicago "created and effectuated a policy, custom, or practice in which the Adult Probation Department [and the City] would team up . . . creating a joint task force" consisting of the Adult Probation Department, the Chicago Police Department, and the FBI, "to illegally go into probationers' homes without warrants to perform illegal searches and seizures, in an effort to persuade probationers[] to become informants and to obtain evidence unlawfully."  (Am. Compl., Dkt. 8, ¶¶ 40, 56.)  *See Monell*, 436 U.S. at 694.  The Cook County supervisory officials sued in their official capacities and the

---

[17]  The parties' briefs contain numerous ad hominem attacks on opposing counsel.  For example, in his submissions addressing the *Monell* issue, Payne calls opposing counsel "impudent" and asserts that he is "dumbfounded" by the County's arguments.  The County ripostes with its own pejorative remarks, such as characterizing all of Payne's arguments as "feeble."  This does nothing to advance the parties' cause.  This is especially true given that the parties filed literally hundreds of pages of submissions in connection with the defendants' multiple motions to dismiss.  This type of "advocacy" in oversize briefs is a waste of words.

City of Chicago challenge Payne's *Monell* claims, arguing that Payne's allegations about the existence of a purported County and City custom, policy, and practice relating to Cook County probationers fail to support an inference that a widespread practice exists and are impermissibly conclusory.

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. 658, at 694. Municipal liability can rest on: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) a constitutional injury caused by a person with final policymaking authority. *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007).

First, the defendants argue that the allegations supporting Payne's *Monell* claims are focused on his own personal experiences and thus fail to support an inference that a widespread practice exists. To survive a motion to dismiss a *Monell* claim, a plaintiff must "plead facts that show 'that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.'" *Liska v. Dart*, No. 13 C 1991, 2014 WL 3704635 at *10 (N.D. Ill. July 23, 2014). Here, the factual allegations that alert the defendants

to the contours of Payne's *Monell* claims overwhelmingly relate to Payne's personal experiences.  Payne, however, also alleges that "the Adult Probation Department obtained several confidential informants for the FBI and the Chicago Police Department" and that in 2011 and 2012, the Adult Probation Department and the City of Chicago conducted two "operations . . . which included stops at more than 100 probationers' homes in the city of Chicago."  (Am. Compl., Dkt. 8, ¶¶ 42, 49.)

There is no bright-line rule for determining when conduct rises to the level of policy or practice but "it is clear that a single incident—or even three incidents—do not suffice."  *Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir. 2014); *see also Nettles-Bey v. Burke,* No. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015) ("Isolated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice.").  Payne has alleged that more than 100 probationers had experiences with the Cook County Adult Probation Department and City of Chicago police officers that are similar to his experience.  This is enough to state a colorable claim of a widespread practice.  *See Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016) (denying motion to dismiss a *Monell* claim because the plaintiffs alleged that they believed that the potential number of individuals affected by the alleged policy exceeds 1,000 annually).

Second, the defendants argues that Payne's *Monell* claims are impermissibly conclusory. A plaintiff may proceed with a *Monell* claim "'even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing.'"  *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)).

Boilerplate allegations about the existence of a custom, policy, and practice, however, do not satisfy this standard. *See Armour*, 2014 WL 63850, at *7; *see also Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *3 (N.D. Ill. Aug. 3, 2015) (collecting cases). For example, courts have held that allegations that a defendant "maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such" or that a defendant discriminated against the plaintiff on the basis of her sex and race "pursuant to wide-spread practice" fail to state an actionable *Monell* claim. *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013); *Sheppard v. Vill. of Glendale Heights*, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011).

Payne alleges the existence of an express policy and asserts that paragraphs 40-67 of his amended complaint contain "extremely specific facts" about that policy. (Pl.'s Resp., Dkt. 89, at 24.) In these paragraphs, Payne alleges, without elaboration, that various defendants created various policies. He further alleges that pursuant to the various policies, "several" people became confidential informants for the FBI and the Chicago Police Department, that probation officers, police, and FBI agents planted drugs, money, guns, and other items on probationers' homes if they refused to become informants, and that the FBI and Chicago police officers gained access to probationers' homes without warrants that they otherwise would have needed. In addition, he alleges that the Adult Probation Department and the City of Chicago deliberately failed to "keep records of misconduct" to conceal their actions. (Am. Compl., Dkt. 8, ¶¶ 51, 66.) Finally, he includes broadly worded allegations of wrongdoing, such as "[t]he City of Chicago has a practice of condoning police misconduct and not disciplining officers who engage in misconduct." (*Id*. ¶ 67.)

The court can easily dispose of the broadly worded allegations. Policy, custom, and practice claims that are not specifically tied into Payne's core allegations about the purported task force consisting of the employees of the Cook County Adult Probation Department, the City of Chicago, and the FBI are impermissibly conclusory. *See Smith v. Hartmann*, No. 12-CV-09915, 2014 WL 2134574, at *5 (N.D. Ill. May 22, 2014) (dismissing a *Monell* claim based on conclusory allegations that defendants had a policy and practice of concealing police misconduct); *see also Armour*, 2014 WL 63850, at *6 (a *Monell* claim must be supported by facts sufficient to give the defendants notice of the alleged wrongdoing).

Payne's other *Monell* claims, however, are supported by allegations of consequences that occurred repeatedly as a result of the purported policies adopted by the Adult Probation Department, Chicago police department, and FBI. As discussed above, factual allegations suggesting that the same situation has arisen many times and the defendant has acquiesced in the outcome can support an inference that a policy exists. *See Liska*, 2014 WL 3704635 at *10. Moreover, the court considers the materials discussed above that Payne submitted in further support of his conspiracy claim. While these documents are not admissible for the truth of the matter therein, they provide additional information about the gist of Payne's *Monell* claims. Discovery may belie Payne's allegations but for now, he has sufficiently alleged the existence of a policy. Payne may proceed with his *Monell* claims. Given this conclusion, the court will not address the parties' arguments regarding the sufficiency of Payne's efforts to allege *Monell* claims against the defendants based on a widespread practice or actions taken by a person with final policymaking authority.

### 2. *Monell* Claims – Respondeat Superior

Payne alleges that Cook County and the City of Chicago are "liable for all torts committed by [their] employees/agents . . . pursuant to the doctrine of respondeat superior. (Am. Compl., Dkt. 8, ¶¶ 5, 7, 12.) Vicarious liability cannot support liability under § 1983. *See, e.g.*, *Monell*, 436 U.S. at 694. Thus, a municipality "cannot be held liable solely because it employs a tortfeasor." *Id.* at 691. Payne's *Monell* claims based on respondeat superior are dismissed with prejudice.

**E.      Motion to Dismiss Search and Seizure Claims Based on The Existence of Probable Cause**

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). A warrantless search of a probationer's person and home is proper only when reasonable suspicion exists that the probationer committed a crime. *See United States v. Knight*, 554 U.S. 112 (2001).

Payne argues that a state court's finding that there was probable cause to believe that he violated the terms of his probation by possessing a gun does not create a reasonable suspicion that retroactively justified the earlier use of handcuffs and a search of his person and apartment as part of a curfew check. In support, he stresses that he personally answered the door and thus demonstrated that he was in his apartment and had not violated his curfew. He then asks how reasonable suspicion to handcuff him and search his person and apartment could exist based on a violation of probation due to failure to comply with his curfew.

The court has discussed reasonable suspicion and probable cause above in the context of qualified immunity. In sum, Payne has alleged that (1) the probation officers had no basis for

their actions since he clearly was at home during curfew hours since he opened the door and (2) the discovery of the shotgun in the closet does not make the probation officers' earlier search of his apartment constitutional. In their reply memorandum, the defendants assert that Payne previously failed to complete a community service assignment and did not comply with a curfew shortly before the curfew check at issue in this case (facts which the court has already held are not properly before it at this point in the proceedings) but state that they reserve challenges to Payne's claims based on the search of his person and apartment until the close of discovery. Thus, the motion to dismiss the search claims based on the purported existence of probable cause is denied.

**F.      Payne's Excessive Force Claims — Use of Handcuffs (Counts I, II, and III)**

The court interprets Payne's excessive force claim as a contention that the decision to restrain him with handcuffs violated his right to be free from an unreasonable seizure. As such, the Fourth Amendment's objective reasonableness standard governs Payne's excessive force claims. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Under this standard, the court must examine the "totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" are specific factors for courts to consider." *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (internal quotations omitted).

As with their reasonable suspicion/probable cause argument, the defendants contend that they were entitled to handcuff Payne because they had a legally justified reason to search his person and apartment. Once again, however, Payne has alleged that the sole purpose of the probation officers' visit was to perform a curfew check and that he personally answered the door, thereby demonstrating (at least this time) that he had complied with his curfew. If the point of the curfew check was to determine if Payne was in his apartment, as Payne alleges, it is unclear why it would be necessary to handcuff Payne immediately after he opened the door or conduct a search of his person and apartment. Thus, the defendants' authority about restraining an individual to facilitate the orderly completion of a search is inapposite.

As with Payne's other constitutional claims, a more fully developed record may result in a different outcome but at the motion to dismiss stage, the court is bound by Payne's allegations. Payne may continue with his excessive force claim as to the probation officer(s) who applied the handcuffs. Excessive force claims against defendants who did not apply the handcuffs are dismissed. Any amended complaint should clarify who applied the handcuffs.

### III. CONCLUSION

Payne has agreed to the dismissal of his state law counts (excluding Counts XXI and XXII, which seek indemnification under state law): Count XI (state law civil conspiracy – all defendants), Count XII (state law false imprisonment – adult probation department), Count XIII (state law false imprisonment), Count XIV (state law false imprisonment – FBI), Count XV (state law malicious prosecution – adult probation department), Count XVI (state law malicious prosecution – Chicago Police Department), Count XVII (state law malicious prosecution – FBI), Count XVIII (state law IIED – adult probation department), Count XVIX (state law IIED –

Chicago Police Department), and Count XX (state law IIED – FBI). In addition, Payne's request to dismiss his claims against Dorothy Brown, Clerk of the Circuit Court of Cook County, is granted.

The Chicago Police Officers' motion to dismiss [48] is denied as moot as Payne dismissed the state law claims that were the subject of that motion. The other motions to dismiss filed by the Cook County defendants [64], Jesus Reyes [66], the City of Chicago [68], and Special Agent Weismantel [70] are granted in part and denied in part as detailed above. Unless the court specified that a claim is dismissed with prejudice, it is dismissed with leave to replead. Any amended complaint must be filed by April 12, 2016. The defendants shall answer or otherwise plead by May 3, 2016. A status hearing is set for May 6, 2016 at 9:30 a.m.

Date: March 21, 2016                    _____/s/_____
                                        Joan B. Gottschall
/cc                                     United States District Judge