**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ORANGELO PAYNE,** | ) | |
| **Plaintiff** | ) | |
| v. | ) | |
| | ) | |
| **COUNTY OF COOK, Illinois,** | ) | |
| **TIMOTHY C. EVANS, Chief Judge of the** | ) | |
| **Circuit Court of Cook County, in his Official** | ) | |
| **Capacity; LAVONE HAYWOOD, Acting Chief** | ) | |
| **Probation Officer for the ADULT COOK COUNTY** | ) | |
| **PROBATION DEPARTMENT, in her Official** | ) | |
| **Capacity; JESUS REYES, Prior Chief** | ) | |
| **Probation Officer for the ADULT COOK** | ) | |
| **COUNTY PROBATION DEPARTMENT,** | ) | |
| **in his individual capacity;** | ) | |
| **PHILLIPPE LOIZON, Deputy Chief of the** | ) | |
| **ADULT PROBATION DEPARTMENT, in his** | ) | |
| **individual and official capacity** | ) | |
| **MARTY JAHN, Adult Probation Officer, in his** | ) | |
| **Individual and official capacity** | ) | |
| **MARK DOVIN, in his individual and official** | ) | |
| **Capacity, Adult Probation Officer, in his** | ) | |
| **individual and official capacity,** | ) | **Case No. 15 CV 3154** |
| **TOM DIBIASE, Adult Probation Officer, in** | ) | **Judge Joan B. Gottschall** |
| **his individual and official capacity,** | ) | |
| **THE CITY OF CHICAGO, a Municipal** | ) | |
| **Corporation; SERGEANT CHRIS** | ) | |
| **PAPAIOANNOU, in his individual and official** | ) | |
| **Capacity, OFFICER MARVIN A. COLEMAN,** | ) | |
| **in his individual and official capacity,** | ) | |
| **OFFICER ANGELO, in his individual and** | ) | |
| **official capacity, PANAGIOTOPOULOS, in** | ) | |
| **his individual and official capacity, OFFICER** | ) | |
| **TAYLOR, in his individual and official** | ) | |
| **Capacity, OFFICER JOHN P. KENNEDY,** | ) | |
| **in his individual and official capacity OFFICER** | ) | |
| **BENNY B. WILLIAMS, in his individual and** | ) | |
| **Official capacity, OFFICER B J DOHERTY,** | ) | |
| **in his individual and official capacity, OFFICER** | ) | |
| **STEVAN VIDLJINOVIC, in his individual and** | ) | |
| **Official capacity and OFFICER DORIN, in his** | ) | |
| **individual and official capacity and FBI SPECIAL** | ) | |
| **AGENT CHRISTOPHER G. WEISMANTEL,** | ) | |
| **Individually and in his official capacity as** | ) | |
| **agent/employee of the FEDERAL BUREAU OF** | ) | |
| **INVESTIGATIONS,** | ) | |
| **Defendants.** | | |

1

## PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff ORANGELO PAYNE, by his attorneys, O'CONNOR LAW GROUP, LLC, and for their Complaint at Law against Defendants, COUNTY OF COOK, Illinois, TIMOTHY C. EVANS, Chief Judge of the Circuit Court of Cook County, LAVONE HAYWOOD, Acting Chief Probation Officer for the ADULT COOK COUNTY PROBATION DEPARTMENT, JESUS REYES, Prior Chief Probation Officer for the ADULT COOK COUNTY PROBATION DEPARTMENT, PHILLIPPE LOIZON, Deputy Chief of the ADULT PROBATION DEPARTMENT, MARTY JAHN, Adult Probation Officer, MARK DOVIN, Adult Probation Officer, TOM DIBIASE, Adult Probation Officer, THE CITY OF CHICAGO, a Municipal Corporation; SERGEANT CHRIS PAPAIOANNOU, OFFICER MARVIN A. COLEMAN, OFFICER ANGELO PANAGIOTOPOULOS, OFFICER TAYLOR, OFFICER JOHN P. KENNEDY, OFFICER BENNY B. WILLIAMS, OFFICER B J DOHERTY, OFFICER STEVAN VIDLJINOVIC, and OFFICER DORIN, Individually and in their official capacity as agents/employees of the CITY OF CHICAGO, and FBI SPECIAL AGENT CHRISTOPHER G. WEISMANTEL, Individually and in his official capacity as agent/employee of the FEDERAL BUREAU OF INVESTIGATIONS, allege and state as follows:

### JURISDICTION

1.      This action is brought pursuant to 42 USC § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

2.      This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. §1367.

3.      Venue is proper under 28 U.S.C. §1391(b).  Plaintiff resides in this judicial

district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff 's claims occurred within this judicial district.

## PARTIES

4.      Plaintiff ORANGELO PAYNE is a resident of Chicago, Cook County, Illinois. ORANGELO currently resides at 14306 Shepard Drive, Dalton Illinois, 60419.

5.      Defendant LAVONE HAYWOOD is the current acting Chief Probation Officer for the Cook County Adult Probation Department.  She is sued in her official capacity.  As Chief Probation Officer, she currently oversees the Adult Probation Department, which was the employer of Defendants JESUS REYES, PHILLIPPE LOIZON, MARTY JAHN, MARK DOVIN, and TOM DIABIASE.  In addition, each Probation Officer and Deputy Chief acted as an agent of the Adult Cook County Probation Department while performing duties related to the Adult Probation Department, including but not limited to conducting "probation compliance checks."  The Chief Probation Officer is responsible for the policies and practices of the Cook County Adult Probation Department.

6.      Defendant JESUS REYES was the prior Chief Probation Officer for the Cook County Adult Probation Department and was acting as Chief Officer during the relevant time period alleged in the instant complaint.  He is sued in his individual capacity.   As prior acting Chief Probation Officer, he oversaw the Adult Probation Department, which was the employer of Defendants JESUS REYES, PHILLIPPE LOIZON, MARTY JAHN, MARK DOVIN, and TOM DIABIASE.  In addition, each Probation Officer and Deputy Chief acted as an agent of the Adult Cook County Probation Department while performing duties related to the Adult Probation Department, including but not limited to conducting "probation compliance checks."  The Chief Probation Officer is responsible for the policies and practices of the Cook County Adult

3

Probation Department.

7.     Defendant Cook County is a municipal corporation within the State of Illinois, which oversees the Adult Cook County Probation Department.  Cook County is obligated by Illinois statute to pay any judgment entered against JESUS REYES and any other ADULT PROBATION DEPARTMENT Defendant.  In addition, each of the other Probation Officers acted as an agent of Cook County while performing duties within the scope of their employment, including but not limited to probation compliance checks.  Cook County is responsible for the policies and practices of Cook County and the Cook County Adult Probation Department.

8.     Defendant Timothy Evans is the Chief Judge of the Circuit Court of Cook County.  The Cook County Adult Probation Department operates under the Office of the Chief of the Circuit Court of Cook County, Judge Timothy C. Evans.  As Chief Judge, he oversees the Adult Probation Department.  Defendant Chief Judge Timothy Evans is sued in his Official Capacity.

9.     The Circuit Court of Cook County oversees the Adult Cook County Probation Department.  The Circuit Court of Cook County is obligated by Illinois statute to pay any judgment entered against LAVONE HAYWOOD or JESUS REYES, as Acting Chief Probation Officer for the Adult Probation Department.  In addition, each of the other Probation Officers acted as an agent of the Circuit Court of Cook County while performing duties within the scope of their employment, including but not limited to probation compliance checks.  The Circuit Court of Cook County is responsible for the policies and practices of Circuit Court of Cook County and the Cook County Adult Probation Department.

10.    Defendant PHILLIPPE LOIZON is the Deputy Chief for the Cook County Adult Probation Department.

11.     Defendants MARTY JAHN, MARK DOVIN, and TOM DIABIASE are Probation Officers for the Cook County Adult Probation Department.

12.     Defendant CITY OF CHICAGO is an Illinois municipal corporation that is or was the employer of Defendants SERGEANT CHRIS PAPAIOANNOU, OFFICER MARVIN A. COLEMAN, OFFICER ANGELO PANAGIOTOPOULOS, OFFICER TAYLOR, OFFICER JOHN P. KENNEDY, OFFICER BENNY B. WILLIAMS, OFFICER BJ DOHERTY, OFFICER STEVAN VIDLJINOIC, and OFFICER DORIN.  Each of the aforementioned officers acted as an agent of the City of Chicago while conducting the arrest, search, interrogation, and detention of Plaintiff ORANGELO PAYNE.  Defendant City of Chicago is responsible for the policies and practices of the Chicago Police Department.

13.     Defendant SERGEANT CHRIS PAPAIOANNOU is a Sergeant with the Chicago Police Department who interrogated Plaintiff on May 22, 2013 at Chicago Police Department, District 001.

14.     Defendants CHICAGO POLICE DEPARTMENT OFFICER MARVIN A. COLEMAN, ANGELO PANAGIOTOPOULOS, OFFICER TAYLOR, OFFICER JOHN P. KENNEDY, OFFICER BENNY B. WILLIAMS, OFFICER BJ DOHERTY, OFFICER STEVAN VIDLJINOIC, and OFFICER DORIN were the Chicago Police Department arresting and interrogating officers.

15.     FBI Agent Christopher G. Weismantel is a Special Agent with The Federal Bureau of Investigation (FBI).  The FBI is an agency of the United States Government which operates under the jurisdiction of the U.S. Department of Justice.  The FBI is the employer of FBI Agent Christopher G. Weismantel.  Agent Weismantel acted as an agent of the FBI while conducting the interrogation and detention of Plaintiff ORANGELO PAYNE.

16.     Each of the individual Defendants acted under color of law and within the scope of his employment.  Each of the individual Defendants is sued in both his individual and official capacity unless otherwise noted.

17.     As alleged in the Counts below, Defendants COUNTY OF COOK, Illinois, TIMOTHY C. EVANS, Chief Judge of the Circuit Court of Cook County, LAVONE HAYWOOD, Acting Chief Probation Officer for the ADULT COOK COUNTY PROBATION DEPARTMENT, JESUS REYES, Prior Chief Probation Officer, PHILLIPPE LOIZON, Deputy Chief, MARTY JAHN, Adult Probation Officer, MARK DOVIN, Adult Probation Officer, and TOM DIBIASE, Adult Probation Officer, will collectively be referred to as the "Adult Probation Department Defendants."

18.      As alleged in the Counts below, Defendants THE CITY OF CHICAGO, a municipal corporation, SERGEANT CHRIS PAPAIOANNOU, OFFICER MARVIN A. COLEMAN, OFFICER ANGELO PANAGIOTOPOULOUS, OFFICER TAYLOR, OFFICER JOHN P. KENNEDY, OFFICER BENNY B. WILLIAMS, OFFICER BJ DOHERTY, OFFICER STEVAN VIDLJINOVIC, and OFFICER DORIN will collectively be referred to as the "Chicago Police Department Defendants."

## FACTS

19.     On or about April 21, 2013, Orangelo Payne resided at 4255 S. Michigan Avenue, Unit 2S Chicago, Illinois with his son and his son's mother Erica Lewis.  The residence was on the second floor and contained a front living room with 2 closets, a kitchen, 2 bedrooms and 1 bathroom.  The 2 bedrooms are located at the back end of the apartment.  Payne and Ms. Lewis resided and slept in separate bedrooms.

20.     On and before April 21, 2013, Plaintiff Orangelo Payne was in the process of

serving a 2 year period of intensive probation for drug possession.  As part of his probation contract, Payne had to consent to searches of his person and/or home if the Probation Officer possessed reasonable suspicion that Payne had committed or was in the process of committing a crime.

21.     As part of his intensive probation, Orangelo Payne was required to be home every evening on or before 7:00 p.m.

22.     Probation Officer Wayne Harris was Orangelo Payne's assigned Probation Officer; Orangelo Payne checked in with Officer Harris every Monday at the Probation Office.

23.     Chief Probation Officer Jesus Reyes assigned probationer Orangelo Payne to Officer Wayne Harris.  At all times prior to April 21, 2013, Wayne Harris was the Officer who performed Orangelo Payne's compliance/curfew checks.

24.      The Probation Department typically performed a curfew check once a week and only required that the Probation Officer verify that Orangelo Payne was home by 7:00 p.m.

25.     At all times prior to April 21, 2015, when the Probation Officer performed the curfew check, the Probation Officer would call Orangelo Payne from his vehicle, request that Orangelo come to the window to prove that he was inside his home, and then would drive off. Prior to April 21, 2013, no Probation Officer ever came inside Orangelo Payne's home in order to conduct the curfew check.

26.      On the evening of April 21, 2013, 3 Probation Officers, believed to be known as Marty Jahn, Mark Dovin, and Tom Dibiase, arrived at Plaintiff Orangelo Payne's home, along with FBI Agent Christopher G. Weismantel.  One of the Probation Officers first called Orangelo Payne on the telephone and advised him he needed to come to the door as he needed to "sign something."

27.    Marty Jahn, Mark Dovin, and Tom Dibiase, and FBI Agent Christopher G. Weismantel rang Plaintiff Orangelo Payne's doorbell.  Defendants Jahn, Dovin, and Dibiase then ordered Plaintiff to let them up to his unit.  Plaintiff then buzzed them into the building.

28.    Marty Jahn, Mark Dovin, and Tom Dibiase and FBI Agent Christopher G. Weismantel then proceeded upstairs to Plaintiff Orangelo Payne's unit on the second floor.

29.    When the Officers arrived at Plaintiff Orangelo Payne's front door, Officers Jahn, Dovin, and Dibiase ordered Plaintiff to open his door after they stated that they "needed to speak with him."  As Orangelo Payne began to open the door, the Probation Officers and FBI Agent Christopher G. Weismantel pushed the door the rest of the way open and proceeded to enter Orangelo Payne's home.  Upon entry, the Probation Officers Jahn, Dovin, and Dibiase acted together and immediately handcuffed Orangelo Payne thereby detaining and arresting him. Payne does not recall which Officer by name handcuffed him but through discovery.  All 3 officers did work together (by either restraining Payne and/or handcuffing him in order for Defendants to handcuff Payne); after the 3 Officers are deposed in discovery, Payne will be able to identify which of the Officers were restraining him and which Officer physically applied the handcuffs.  FBI Agent Weismantel did not at anytime personally apply handcuffs on Payne.

30.    The amount of force (and the number of Officers) used to effectuate the unlawful arrest, in restraining and handcuffing Payne, was excessive and not necessary to restrain Payne who was not resisting the Officers.

31.    Neither the Adult Probation Officers nor the FBI Agent Christopher G. Weismantel possessed any reasonable suspicion of a probation violation as Orangelo Payne was clearly home, inside his residence, at the time the Probation Officers and FBI Agent arrived to perform a "curfew check."

8

32. After handcuffing Orangelo Payne, the Probation Officers continued to restrain Orangelo Payne within a few feet of the door to his apartment. Orangelo Payne remained at the entry way at all times and was never inside either of the bedrooms of the apartment.

33. Orangelo Payne did not pose any danger to any Probation Officer or to FBI Agent Christopher G. Weismantel at the time they entered his apartment, at the time he was handcuffed, or at any time during the search of Orangelo Payne's person and/or his home.

34. Immediately after Orangelo Payne was handcuffed, FBI Agent Christopher G. Weismantel began to interrogate Payne. FBI Agent Christopher G. Weismantel showed Payne his FBI identification badge, advising Payne that he was an FBI Agent.

35. During his interrogation of Payne, FBI Agent Christopher G. Weismantel showed Orangelo Payne a picture of a presumably known gang member by the name of "Poe" (believed to be known as Paris Poe). Paris Poe was a suspect in the death of one of the FBI's informants, who had been shot 25 times in his driveway on April 14, 2013. FBI Agent Christopher G. Weismantel believed Plaintiff Orangelo Payne possessed information about where Paris Poe could be located.

36. Orangelo Payne told FBI Agent Weismantel that he knew little about Poe or where he could be found. After Payne could not give FBI Agent Weismantel Poe's location or whereabouts, FBI Agent Christopher G. Weismantel then ordered an illegal search of Payne's home by ordering and/or authorizing the Probation Officers to "search the place." The Probation Officers at all times took their directions from FBI Agent Christopher Weismantel.

37. Thereafter, the Cook County Adult Probation Officers and FBI Agent Christopher G. Weismantel performed a warrantless, unreasonable search of Orangelo Payne's home, as such Officers lacked any reasonable suspicion of any probation violation. The Officers searched

9

Orangelo Payne's entire residence, including his girlfriend's bedroom, which was located at the back of the apartment, nowhere within the vicinity of Orangelo Payne at the time he was restrained.

38.     Thereafter, one of the Probation Officers who searched the residence retrieved a 12 gauge antique shotgun (year 1905) from Erica Lewis's bedroom closet, located in the back bedroom of the apartment.

39.     After discovering the shotgun, one of the Probation Officers called the Chicago Police Department.

40.     Chicago Police then arrived at the scene.  One of the Chicago Police Officers then took the Probation Department issued handcuffs off of Payne and forcibly applied a separate pair of Chicago Police issued handcuffs, thereby arresting and restraining Orangelo Payne.  Payne was not resisting the Chicago Police Officers and at all times cooperated with the Chicago Police Department.   One of the Chicago Police Officers then placed Orangelo Payne into a Chicago police squad car and transported Orangelo to District 1, located at 1718 S. State Street, Chicago, Illinois.

41.     Neither the Probation Officers nor the Chicago Police Department ever provided Orangelo Payne with his Miranda rights nor advised him of what charges he was being arrested for, further ensuring that Plaintiff's constitutional rights were violated.  At no point did Plaintiff knowingly or voluntarily waive his right to remain silent or his right to have counsel present at his home or at the police station during the interrogation.

42.     The Adult Probation Department Defendants never documented FBI Agent Christopher G. Weismantel' s presence in Orangelo' s file; such details were purposefully left out of Payne's file so as to conceal FBI Agent Christopher G. Weismantel' s presence at

10

Orangelo's home.

43.     Several months after Payne's initial arrest, and after Payne's advised his criminal defense attorney that an FBI Agent was present during the illegal search on April 21, 2013, and after multiple requests for discovery, Payne's criminal defense counsel received confirmation, by written report, that FBI Agent Weismantel was present during the curfew/compliance check, interrogated Payne at his home, and then subsequently interrogated Payne at the Chicago Police Department station.  The CPD and Adult Probation Department reports do not report that FBI Agent Weismantel was present during the April 21, 2013 compliance/curfew check.

44.     Prior to the time Payne's criminal defense attorney finally received the report referenced in the proceeding paragraph, the Adult Probation Department, the Chicago Police Department, the Cook County States Attorney, and FBI Agent Weismantel denied that FBI Agent Weismantel had been present during the April 21, 2013 curfew check and attempted to conceal Agent Weismantel's presence and involvement; specifically, the authorization and order of an unlawful search and seizure.

45.     Upon arriving at District 001, Orangelo Payne was placed into an interrogation room with FBI Agent Christopher G. Weismantel and Sergeant Chris Papaioannou.  Both Agent Christopher G. Weismantel and Sergeant Chris Papaioannou interrogated Orangelo Payne on matters unrelated to his arrest, including interrogating him for information or intelligence regarding gang violence; specifically, knowledge of an alleged gang member by the name of Paris Poe.

46.     Orangelo Payne was ultimately charged with unlawful possession of a firearm and as an armed habitual criminal after he was unable to provide FBI Agent Christopher G. Weismantel or Sergeant Chris Papaioannou with further knowledge of Paris Poe.

11

47.     Orangelo Payne was thereafter placed in lockup and Cook County Jail, located at 2700 S. California Avenue, Chicago, IL 60608.  He served 16 months in jail before the Cook County State's Attorney Anita Alverez declined to pursue the charges.  The charges were dropped in July of 2014.

48.     Orangelo Payne was released from prison on July 28, 2014.

**The Adult Probation Department**

49.     Chief Judge Timothy C. Evans employed Jesus Reyes and Lavone Haywood as Chief Probation Officers for the Cook County Adult Probation Department.  Chief Judge Evans also employed the individual Probation Officers, including Officers Jahn, Covin and Diabiase.

50.     Chief Judge Timothy C. Evans supervised all Adult Probation Department employees, including Chief Probation Officer Jesse Reyes, Chief Probation Officer Lavone Haywood, Deputy Chief Philippe Loizon, and Probation Officers Jahn, Covin and Diabiase.  The Chief Probation Officers and the Deputy Chief work directly underneath Judge Evans; Judge Evans delegates the day-to-day management of the individual Probation Officers, including Jahn, Covin and Diabiase, to the Chief Probation Officer and to the Deputy Chief.

51.     Deputy Chief Philippe Loizon supervises the specialized weapons unit, which is overseen by Jesus Reyes and/or Lavone Haywood.  As Deputy Chief, Philippe Loizon supervises the Probation Officers who work with specialized weapons unit.  Probation Officers Jahn, Dovin and Dibiase all worked with the specialized weapons unit. Probation Officers Jahn, Dovin and Dibiase received their daily assignments from either Jesus Reyes or Philippe Loizon.

52.     The Chief Probation Officer and the Deputy Chief have offices at the Department.  Chief Jesse Reyes and Deputy Chief Loizon interacted on a daily basis as part of their job duties in managing the Department.

53.     On April 21, 2013, and at all times in which he served as Chief Probation Officer, Jesus Reyes supervised the Probation Officers, including Deputy Chief Philippe Loizon, and Probation Officers Marty Jahn, Mark Dovin, and Tom Dibiase.

54.     Deputy Chief Philippe Loizon also serves as a direct supervisor to Probation Officers Marty Jahn, Mark Dovin, and Tom Dibiase.

55.     As the current Chief Probation Officer, Lavone Haywood supervises all Probation Officers, including Deputy Chief Philippe Loizon, and Probation Officers Marty Jahn, Mark Dovin, and Tom Dibiase.

56.     As part of their supervisor responsibilities, Chief Probation Officer Jesus Reyes and/or Lavone Haywood made the probationer assignments to the Officers. A probationer was each assigned his own Probation Officer to oversee/monitor his/her probation during its term. Additionally, the Chief Probation Officer's duties include overseeing the Probation Officers' monitoring and enforcement of the terms of probationers' agreements by regularly reviewing the status of probationers' compliance, by personally attending compliance checks on occasion, and by requiring reports from their Probation Officers on each probationer. Also, as Chief Probation Officer, Jesus Reyes and/or Lavone Haywood were responsible for ensuring that the Officers working underneath them complied with the policies and procedures of the Department. They were further responsible for reprimanding any Officer who violated Department policy and were responsible for terminating and/or recommending termination to Chief Evans. The Chief Probation Officer was also required to report all policy violations and misbehavior of any Probation Officer to Chief Evans.

57.     As acting supervisors, Chief Probation Officers Jesus Reyes and/or Lavone Haywood are directly involved with the day-to-day tasks of their Probation Officers. The Chief

Probation Officer regularly meets with the Probation Officers to discuss probationers' compliance and violations of probation and to discuss the entry of new probationers into the program and the anticipated release of probationers who completed their probation. Additionally, Chief Probation Officers Jesus Reyes and Lavone Haywood make the assignments for the Probation Officers, including ordering compliance/curfew checks on certain probationers. On occasion, the Chief Probation Officer would perform and/or attend a compliance/curfew check with the Probation Officer.

58.     As acting supervisors, Chief Probation Officers Jesus Reyes and/or Lavone Haywood required that the Probation Officers complete all necessary reports and paperwork for each probationer, including documenting all compliance/curfew checks.  Department policy required that reports pertaining to the compliance/curfew checks must include the identifies of all persons present during the compliance check and must include all pertinent facts to describe either the probationer's compliance or violation.  As acting supervisor, the Chief Probation Officer (Jesus Reyes and/or Lavone Haywood) was responsible for reviewing and signing off on the completed reports of the Probation Officers.

59.     Chief Probation Officer Jesus Reyes and/or Lavone Haywood and Deputy Chief Loizon engaged in routine meetings with Chief Judge Evans for the purpose of overseeing the management of the probation department, including the individual probationers' compliance with their probation.  Additionally, the Chief Probation Officer and Deputy Chief were required to report all violations of internal policy by any Department employee to Chief Judge Evans. Chief Judge Evans was responsible for terminating and/or disciplining all members of the Adult Probation Department.

60.     Deputy Chief Loizon regularly held separate meetings with individual probation

14

officers, including Officers Jahn, Dovin and Diabiase, to discuss what the Probation Officers had ascertained about other crimes, evidence, and/or the location and identify of other criminal suspects during the Officers' performance of either prior compliance checks or through their own discussions with other Officers within the Department or with probationers. In holding these meetings, Chief Loizon sought to discover information which could lead to the arrest of other persons and/or lead to the discovery of information/evidence. If the possessor of such information/evidence was a probationer, Deputy Chief Loizon would direct the Officers of the specialized weapon unit, including Officers Jahn, Dovin, and Diabiase, to conduct a warrantless search/seizure under the guise of a "compliance/curfew" check of the probationer who he believed held such information/evidence.

61. Additionally, Chief Loizon would review reports filed in the Department by other Probation Officers (including Wayne Harris) to investigate possible leads/access to evidence that could possibly lead to arrests of other persons. Chief Loizon would then assign to the members of the specialized weapons unit probationers in which Loizon believed possessed certain information and/or evidence and order the Probation Officer to conduct an unlawful search/seizure under the guise of a compliance/curfew check of the probationer.

62. Deputy Chief Loizon regularly held separate meetings (both over the phone and in person) with FBI Agents, including Agent Christopher G. Weismantel, in which they would discuss probationers of whom they believed possessed either information or evidence related to crimes committed by other persons who were not probationers. Chief Loizon and FBI Agent Christopher G. Weismantel would then devise a plan to effectuate an unlawful search of a probationer's person or his home, under the guise of a curfew/compliance check, to gain access to information or evidence that otherwise required the issuance of a warrant.

15

63. Chief Loizon and Agent Weismantel held these meetings both at Chief Loizon's office at the Department and at other locations offsite, including restaurants, donut shops, and even in vehicles.

64. At various times, the Chicago Police Department would contact Loizon and/or Jesus Reyes and request that they be allowed to accompany a Probation Officer to a compliance/curfew check of a probationer in order to obtain access to evidence or to information regarding other suspects/other crimes in which the Chicago Police believed a probationer possessed. Both Loizon and Reyes participated in facilitating the Chicago Police Department's request and would assign certain Probation Officers within the special gun unit to perform the "compliance/curfew" check.

65. At times, Chief Loizon and Agent Weismantel would contact probationers by phone and request that the probationer physically come to the Probation Department office. Once the probationer arrived at the office, Chief Loizon and Agent Weismantel would threaten the probationer, falsely state that they possessed culpatory evidence against such probationer, and in some cases, offer to pay the probationer for information that would lead to the discovery of evidence (specifically gang members' identities/locations and guns). If the probationer complied with the threats, he/she was awarded with money and promises of future "good" treatment. If the probationer failed to comply with the threats, Chief Loizon and Agent Weismantel would further threaten the probationer, plant evidence on the probationer's person/home and/or harass the probationer during compliance/curfew checks.

66. Chief Probation Officer Jesus Reyes on occasion would attend the meetings Chief Loizon held with the probationers and the meetings Loizon held with FBI Agent Weismantel.

67. Prior to April 21, 2014, Deputy Chief Loizon and FBI Agent Weismantel had

threatened several other probationers, performed warrantless search and seizures of probationers' persons and homes and had paid off several other probationers which resulted in gaining access to information/evidence/suspects that legally required the prior issuance of a warrant.

68.     Chief Loizon and FBI Agent Weismantel met with a certain probationer on more than 5 occasions in which they paid the probationer large sums of money to "give up" the identities and locations of other persons who possessed illegal guns.  On several occasions, this probationer was escorted by vehicle with Loizon and Weismantel to identify (undercover) certain individuals on the street.  Such actions were not required as a condition of the probation; instead, Loizon and Agent Weismantel were exploiting the probationer by threatening him if he did not comply.

69.     On another occasion, Deputy Loizon directed Probation Officer Jahn to perform a warrantless search/seizure under the guise of a  "compliance/curfew" check with FBI Agent Weismantel in which FBI Agent Weismantel sought information believed would lead to the arrest of a wanted FBI subject.  Officer Jahn and Agent Weismantel arrested/restrained the probationer in his home (by handcuffing him) and then threatened the probationer by claiming that they would "plant a gun" if he did not provide the information they were looking for.

70.     On another occasion, Deputy Loizon personally met with a probationer and ordered him to "give him guns" (giving up the names of other gang members who the probationer knew possessed firearms); he threatened to report false probation violations if the probationer did not comply.

71.     In order to effectuate such unlawful warrantless search and seizures, Deputy Loizon and the individual Probation Officers, including Jahn, Dovin, and Dibiase, required the assistance of the Chicago Police Department.  Specifically, the Chicago Police Department,

17

through its police officers, was required to assist with the arrest and processing of probationers ultimately arrested and/or other persons identified by probationers during the unlawful search/seizures.   In exchange for their assistance, Deputy Loizon and the individual Probation Officers of the specialized weapons unit, including Jahn, Dovin, and Dibiase, would interrogate/investigate probationers for information the Chicago Police Department sought regarding suspects/evidence related to other crimes.  The information the Adult Probation Department obtained from probationers' files and from compliance checks of probationers (which included unlawful search and seizures of probationers' homes) at the request of the Chicago Police Department would otherwise have required the issuance of a warrant.

72.    Once the Probation Officers obtained information unlawfully during a compliance check, Deputy Loizon and/or a Probation Officer, including Jahn, Dovin, and Dibiase, would provide the information to the Chicago Police Department.  Upon receipt, a Chicago Police officer would contact the State's Attorney and request the issuance of a "John Doe" warrant (based upon information received from the Probation Department) to effectuate an arrest or search.

73.    Together, the Adult Probation Department, the Chicago Police Department, and the FBI created this  "joint task force" in which they, working together, exploited the probationary program and performed countless illegal searches and seizures of probationers.

74.    The Probation Officers, including Jhan, Dovin, and Dibiase would purposefully conceal the presence of FBI Agents at compliance/curfew checks by not including the fact that they were present on their formal reports.

75.     Both the Chicago Police Department and the FBI regularly visited probationers' homes illegally as part of such joint task forces.  In 2011 and 2012, the Adult Probation

Departments conducted two operations with the Chicago Police Department which included stops at more than 100 probationers' homes in the city of Chicago.

76. The "Joint Task Force" had been in practice for several years prior to Orangelo Payne's arrest.

77. Prior to April 21, 2013, several Probation Officers reported the illegal practices of the Joint Task Force to both Chief Probation Officer Jesus Reyes and Chief Judge Evans. However, neither Jesus Reyes or Chief Evans investigated the reports prior to Payne's arrest. Neither Chief Evans nor Jesus Reyes investigated the reports of such illegal practice and policy violations. Instead, Chief Evans and Jesus Reyes concealed the Adult Probation Department's misconduct until the media began to expose the stories of former probationers and retired Probation Officers.

78. Chief Judge Timothy Evans removed Jesus Reyes from the Office of Chief Probation Officer in March of 2014 and replaced him with Lavone Haywood, based upon such allegations.

79. Chief Judge Timothy Evans also removed Deputy Chief Loizon from his position.

80. Chief Judge Evans hired an independent law firm to conduct an internal investigation to address allegations regarding the *de facto* policy, including that high ranking officials, including Jesus Reyes and Philip Loizon, coordinated with other law enforcement agencies, including the FBI and the Chicago Police Department, to illegally search probationers' homes. The results of such investigation have never been released.

81. Both Chief Probation Officer Jesus Reyes and Deputy Chief Loizon authorized the illegal search and seizure of Payne on April 21, 2013. Specifically, FBI Agent Weismantel had met with Deputy Chief Loizon and Jesus Reyes prior to the search in which FBI Agent

Weismantel discussed with Reyes and Loizon that the FBI had reason to believe that Payne had knowledge of the location of a guy named "Poe" who was a federal suspect for the murder of an FBI informant. FBI Agent Weismantel asked Loizon and Reyes to arrange for a search and seizure (and interrogation) of Payne under the guise of a compliance/curfew check so that FBI Agent Weismantel could interrogate Payne. Loizon and Reyes agreed to authorize the illegal search/compliance check. Loizon and Reyes then assigned Officers Jahn, Dovin, and Diabiase to conduct the "compliance/curfew check" on April 21, 2013.

82.     Probation Officers Jahn, Dovin, and Diabiase completed the reports of the April 21, 2013 search/seizure of Payne and turned them into Chief Probation Officer Jesus Reyes. Jesus Reyes reviewed the reports of the compliance/curfew check which did not mention FBI Agent Weismantel's presence. Jesus Reyes did not correct/amend the reports to include Agent Weismantel's presence and instead agreed to further conceal Agent Weismantel's presence at the April 21, 2013 compliance/curfew check.

**Policy & Practices**

83.     Defendant Chief Judge Timothy Evans, Defendant Chief Probation Officer Jesus Reyes and Lavone Haywood, and Defendant Phillipe Loizon were all policy makers for the Adult Probation Department. As policymakers, they promulgated, adopted and/or put into effect policies, procedures and/or de facto customs which were in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their person, and to be free from the use of excessive force, which policies, procedures and/or de facto customs, were in force and in effect on April 21, 2013.

84.     The Circuit Court of Cook County, through the establishment of the Adult

20

Probation Department, under the direction of supervisor Chief Judge Timothy C. Evans and through its Chief Probation Officer Jesus Reyes, and Deputy Chief Philippe Loizon, who supervised the specialized weapons unit, created a policy, custom, or practice in which the Adult Probation Department would team up with other law enforcement agencies, including the Chicago Police Department and FBI, thereby creating a joint task force, to illegally go into probationers' homes without warrants to perform illegal searches and seizures, in an effort to persuade probationers' to become informants and to obtain evidence unlawfully.

85.    The Cook County Adult Probation Department, under the direction of supervisor Chief Judge Timothy C. Evans and through its Chief Probation Officer Jesus Reyes, and Deputy Chief Philippe Loizon and individual Officers Jahn, Dovin, and Dibiase, effectuated the Adult Probation Department's policy, custom, or practice, by building alliances with the Chicago Police Department and the FBI.  The policy and practice in creating this "Joint Task Force" resulted in the Defendants' making frequent, unannounced visits to probationers' homes, conducting illegal and warrantless searches of both the probationers and their homes, exceeding their authority, in an attempt to obtain statements and evidence which would otherwise require the issuance of a warrant.

86.    The City of Chicago, through the establishment of the Chicago Police Department, and as a policymaker for the Chicago Police Department, adopted, created and effectuated the *de facto* policy, custom, or practice, by building alliances with the Adult Probation Department and the FBI.  The policy and practice in creating this "Joint Task Force" resulted in the Defendants' making frequent, unannounced visits to probationers' homes with Adult Probation Officers, conducting illegal and warrantless searches of both the probationers and their homes, exceeding their authority, in an attempt to obtain statements and evidence

21

which would otherwise require the issuance of a warrant.

87.    The "joint task force" was created in part by a larger scale policy and arrangement between the Cook County Adult Probation Department, the FBI, and the Chicago Police Department in which they conspired to plan and effectuate unlawful searches and seizures of probationers' homes and persons under the guise of performing curfew checks.  The joint task force was created so that the Chicago Police Department and the FBI could perform interviews and gain access to evidence (by searching probationers' homes and persons) which legally required the issuance of a warrant. The policy, custom, or practice included the performance of illegal, warrantless searches of probationers' homes and persons under the guise of a "security sweep" or "compliance/curfew" check with the intent to search persons and property which otherwise required a warrant.

88.    The policy, custom, or practice further provided for the Adult Probation Department, after they performed such illegal searches and seizures, to assist the Chicago Police Department and/or FBI in interrogating the probationer regarding individuals the Chicago Police Department, and/or the FBI sought information on.  The Chicago Police Department and/or the FBI would then offer to suppress the evidence found during the illegal search in exchange for the probationer's information and/or agreement to become an informant. Deputy Chief Loizon of the Adult Probation Department would then promise special treatment and/or threaten to disrupt the probationers' lives if they refused to cooperate as informants.   Deputy Chief Loizon and FBI Agent Wesimantel would regularly meet with the probationers after the illegal search/seizures to interrogate the probationer further and to pay off the probationer with money when the probationer complied with Chief Loizon and Agent Weismantel's requests.  The probationers would either meet with Loizon and Agent Weismantel at Loizon's office at the Department

offices and/or in a vehicle, donut shop, or restaurant.  During these meetings, Loizon and FBI

Agent Weismantel would order the probationer to "give up" names of other known persons

affiliated with certain gangs and/or "give up" names of other persons known to possess illegal

weapons and/or drugs.

89.     Several Adult Probation Department officers became aware of the *de facto* policy

and procedures within the Department, including Deputy Loizon's personal relationships with

probationers who he previously exploited.  Deputy Loizon approached other Probation Officers

who refused to comply with his orders to exceed the scope of their authority during

compliance/curfew checks.  Several of the Probation Officers complained to their supervisor

Chief Probation Officer Jesus Reyes; however Reyes took no action to investigate the complaints

further.   At least one other Probation Officer made similar reports to Chief Judge Evans;

however, no action was taken by Chief Evans to investigate the reports further.  Chief Judge

Evans and Chief Officer Jesuse Reyes acquiesced in Deputy Loizon's direction of his Probation

Officers and in his exploitation of power/scope of his authority within the Adult Probation

Department.

90.     The "joint task force" was created in part by a larger scale policy and arrangement

between the Cook County Adult Probation Department, the FBI, and the Chicago Police

Department in which they conspired to plan and effectuate unlawful searches and seizures of

probationers' homes and persons under the guise of performing curfew checks.  The joint task

force was created so that the Chicago Police Department and the FBI could perform interviews

and gain access to evidence (by searching probationers' homes and persons) which legally

required the issuance of a warrant.

91.     FBI Agents and Chicago Police Officers are not authorized to perform warrantless

23

searches of probationers' homes during a routine curfew check. A Probation Officer may only request the presence of a law enforcement officer for security purposes; such law enforcement officer's role is limited to "standby". The *de facto* policy resulted in the FBI and CPD's direct involvement and at times, direction, of unlawful search and seizures, exceeding the scope of any legal authority such officer may have to be present in a "security" or "standby" role.

92. Members of the Adult Probation Department, together with the Chicago Police Department and the FBI, planted drugs, money, firearms and other paraphernalia in probationers' homes if they refused to become informants.

93. As a result of the policy, custom, or practice created and effectuated by the Adult Probation Department, the Chicago Police Department, and the FBI, working together, the "joint task force" obtained several confidential informants who went on to work for the FBI and the Chicago Police Department. In order to get the probationers to act as informants, the "Joint Task Force" would threaten the probationer with additional charges by planting evidence in the probationer's home. This policy, custom, or practice resulted in cultivating probationers to become informants, encouraging them to engage in illegal activity or to be close to illegal activities, when the purpose of the probationary program is to assist the probationer in improving their lives and reducing the chance they will reengage in criminal activity.

94. This policy ensured that other law enforcement agencies, including the Chicago Police Department and the FBI, received unfettered access to homes without obtaining court-ordered warrants. As a result of the policy and the creation of the "joint task force", the FBI seized dozens of guns and arrested several individuals based upon information illegally obtained from probationers.

95. The *de facto* policy resulted in the practice of condoning and encouraging

Probation Officer, FBI Agent, and Chicago Police Officer misconduct. The policy ensured that the Officers involved with the illegal search and seizures would not be investigated or disciplined.

96.     The *de facto* policy resulted in both the Adult Probation Department and Chicago Police Department's failure to properly investigate the Officers' involvement as part of the joint task forces designed to promote illegal searches and seizures of probationers' homes and of their persons.

97.     The Adult Probation Department, the City of Chicago, and the FBI deliberately failed to adequately keep records of misconduct, including failing to keep records of search and seizures performed in connection with "curfew checks" of probationers to prevent patterns of misconduct from being established. These actions deliberately further the concealment of Adult Probation Department Officer and Chicago Police Officer misconduct.

98.     The *de facto* policy, custom, or practice of the Adult Probation Department, Chicago Police Department, and FBI, was in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their person, and to be free from the use of excessive force, which policies, procedures and/or de facto customs, were in force and in effect on April 21, 2013.

99.     The April 21, 2013 unlawful search and seizure of Orangelo Payne was caused by the *de facto* policy creating the joint task force.

100.    Defendant Deputy Loizon and Chief Probation Officer Jesus Reyes authorized the "joint task force," including Probation Officers Jahn, Dovin, and Diabise to perform a warrantless search and seizure of Payne under the guise of a compliance/curfew check on April

21, 2013. Defendants Loizon and Reyes further authorized FBI Agent Weismantel to participate in the unlawful search and seizure by allowing him to assist with the Probation Officers.

101.    The Chicago Police Officers Sergeant Chris Papaioannou, Officer Marvin A. Coleman, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin, as part of the "joint task force," effectuated the aforementioned policy, custom, or practice, by performing their own warrantless unlawful search and seizure of Plaintiff Orangelo Payne on April 21, 2013. The Chicago Police Department did not have a warrant for the arrest or search of Payne or his home. FBI Agent Weismantel ordered the unlawful search of Payne's person and home, without any reasonable suspicion necessary to do so, which resulted in the recovery of the shotgun. CPD was then contacted to arrest and further search Payne and his home, based upon the unlawful recovery the shotgun. Because the Adult Probation Department's search of Payne's person and his home was unlawful, the subsequent arrest and search of Payne and his home by CPD was also unlawful.

102.    FBI Agent Christopher G. Weismantel was never authorized to order or perform a warrantless search of Orangelo Payne's person or his home.

103.    Plaintiff Orangelo Payne was further subjected to the *de facto* policies of the Adult Probation Department and the Chicago Police Department, after he was illegally searched and interrogated about unrelated matters to his probation, and was pressured to become an informant for the FBI. When Orangelo Payne lacked the information FBI Agent Christopher G. Weismantel sought, he, without any authority to do so, authorized the Adult Probation Officers to perform an illegal search of Plaintiff Orangelo's home.

104.    Plaintiff Orangelo Payne was further subjected to the *de facto* policies of the

26

Adult Probation Department and the Chicago Police Department as neither Department properly

investigated the unlawful restraint/arrest and excessive force of Payne or the unlawful search of

his home during the "curfew check" of Orangelo Payne on April 21, 2013.

**COUNT I**
**42 U.S.C. § 1983 - EXCESSIVE FORCE**
**Plaintiff v. Adult Probation Department**
**Defendants Marty Jahn, Mark Dovin & Tom Dibiase**

105.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in

paragraphs 1 through 104 as paragraph 105 of Count I, as though set forth verbatim herein.

106.    Upon opening the door, Orangelo Payne did not pose an immediate danger of

serious bodily harm to either himself or to the Probation Officers.

107.    Upon immediately entering Payne's home, Probation Officers Marty Jahn, Mark

Dovin, and Tom Dibiase applied handcuffs to Payne.  Each Officer physically restrained Payne

in order to apply the handcuffs; all 3 Officers physically were holding or touching Payne's arms

and back in order to apply the handcuffs.

108.    Payne did not have any weapon on his person at the time he was handcuffed.

109.    Payne was not resisting Officer Marty Jahn at the time Officer Jahn handcuffed him.

110.    Payne was not resisting Officer Mark Dovin at the time Officer Dovin handcuffed

him.

111.    Payne was not resisting Officer Tom Dibiase at the time Officer Dibiase

handcuffed him.

112.    At all times, Payne cooperated with the Probation Officers while they performed a

"curfew check."

113.    The Probation Officers were not authorized to restrain Orangelo Payne by

handcuffing him as the Officers lacked any probable cause or reasonable suspicion necessary to

27

justify the arrest/restraint.  The Probation Officers were present at Payne's home merely to

perform a curfew check; as such, after Orangelo Payne opened the door, verifying he was in fact

home, the Probation Officers should have then left.  Their use of force in restraining and

arresting Orangelo Payne was excessive as no force was necessary or authorized.

114.    The Probation Officers' use of force was without cause and was unnecessary and

unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth Amendment

Rights.  All of the force described above was without legal cause and constituted excessive force.

115.    The actions of the Probation Officers were done pursuant to one or more *de facto*

policies, practices and/or customs of the Adult Probation Department as outlined above in

Paragraphs 19 through 104 above.

116.    The aforementioned policies, practices, and customs of the Adult Probation

Department Defendants were maintained and implemented with deliberate indifference and have

encouraged the Adult Probation Officer Defendants to commit wrongful acts against the Plaintiff

and therefore are a proximate cause of the injury to the Plaintiff and to the deprivation of the

Plaintiff 's constitutionally protected rights under the Fourth and Fourteenth Amendments to the

United States Constitution.

117.    Additionally, by reason of the conduct of the individual Defendants Mary Jahn,

Mark Dovin, and Tom Dibiase in their use of unnecessary, excessive and unreasonable force on

Plaintiff Orangelo Payne, Orangelo Payne was deprived of the rights, privileges, and immunities

secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and

law enacted thereunder.  Therefore, Defendants Mary Jahn, Mark Dovin, and Tom Dibiase are

liable to Plaintiff  Orangelo Payne pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against

28

Defendants Mary Jahn, Mark Dovin, and Tom Dibiase of the Adult Probation Department and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action. Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against the Defendants.

**COUNT II**
**42 U.S.C. § 1983 - EXCESSIVE FORCE**
**Plaintiff v. Chicago Police Department Defendants**

118.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as Paragraph 118 of Count II, as though set forth verbatim herein.

119.    The Chicago Police Department Officers were not authorized to restrain Orangelo Payne by handcuffing him as the Officers lacked any probable cause or reasonable suspicion necessary to justify the arrest/restraint. The Chicago Police Department's use of force in restraining and arresting Orangelo Payne was excessive as no force was necessary or authorized.

120.    Payne did not have any weapon on his person at the time he was handcuffed.

121.    Payne was not resisting any Chicago Police Officer at the time the Chicago Police Officers handcuffed him.

122.    At all times, Payne cooperated with the Chicago Police Department officers.

123.    The Chicago Police Department's use of force was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth Amendment Rights. All of the force described above was without legal cause and constituted excessive force.

124.    The actions of the Chicago Police Department were done pursuant to one or more *de facto* policies, practices and/or customs of the Chicago Police Department as outlined above in 83 through 104 above.

29

125.    The aforementioned policies, practices, and customs of the City of Chicago, through the Chicago Police Defendants are a proximate cause of the injury to the Plaintiff and the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

126.    The aforementioned policies, practices, and customs of the Chicago Police Department Defendants were maintained and implemented with deliberate indifference and have encouraged the Chicago Police Department Defendants to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff and the deprivation of the Plaintiff 's constitutionally protected rights.

127.    Additionally, by reason of the conduct of the individual Defendants Sergeant Chris Papaioannou, Officer Marvin A. Coleman, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin, in their use of unnecessary, excessive and unreasonable force on Plaintiff Orangelo Payne, Orangelo Payne was deprived of the rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder.  Therefore, Defendants Sergeant Chris Papaioannou, Officer Marvin A. Coleman, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin are liable to Plaintiff Orangelo Payne pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against the Chicago Police Department Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.  Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against the municipal Defendants.

**COUNT III**
**FOURTH AMENDMENT - EXCESSIVE FORCE**
**Plaintiff v. FBI Special Agent Christopher G. Weismantel**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT IV**
**42 U.S.C. § 1983 - UNREASONABLE SEIZURE OF PLAINTIFF 'S PERSON**
**Plaintiff v. Adult Probation Department Defendants**

128.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in

paragraphs 1 through 104 as paragraph 128 of Count IV, as though set forth verbatim herein.

129.    The Defendant Circuit Court of Cook County, through the establishment of the

Adult Probation Department, and as a policymaker for the Adult Probation Department, in

conjunction with Defendant Jesus Reyes, also a policymaker for the Adult Probation

Department, promulgated, adopted and/or put into effect policies, procedures and/or de facto

customs which were in direct violation of 42 USC §1983, and in direct contravention of the

constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable

and unlawful searches of their person, which policies, procedures and/or de facto customs, were

in force and in effect on April 21, 2013.

130.    Upon opening the door, Orangelo Payne did not pose an immediate danger of

serious bodily harm to either himself or to the Probation Officers.   As such, the Probation

Officers were not authorized to perform any search of Orangelo Payne nor were they authorized

to restrain Orangelo Payne.  Nevertheless, the Adult Probation Officers immediately seized

Plaintiff Orangelo Payne, thereby arresting him at the time Plaintiff Orangelo Payne opened the

door.

131.    Moreover, the Probation Officers were not authorized to restrain Orangelo Payne

by handcuffing him as the Officers lacked any probable cause or reasonable suspicion necessary

to justify the arrest/restraint.  The Probation Officers were present at Payne's home merely to

perform a curfew check; as such, after Orangelo Payne opened the door, verifying he was in fact home, the Probation Officers should have then left.

132.    The actions of the Adult Probation Department were done pursuant to one or more *de facto* policies, practices and/or customs of the Adult Probation Department as outlined above in Paragraphs 83 through 104.

133.    The aforementioned policies, practices, and customs of the Adult Probation Department Defendants are a proximate cause of the injury to the Plaintiff and the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

134.    The aforementioned policies, practices, and customs of the Adult Probation Department Defendants were maintained and implemented with deliberate indifference and have encouraged the Adult Probation Officer Defendants to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff and to the deprivation of the Plaintiff 's constitutionally protected rights.

135.    The seizure of Plaintiff's person and arrest of Plaintiff Orangelo Payne, was caused by the Adult Probation Department Defendants; specifically, Mary Jahn, Mark Dovin, and Tom Dibiase and was done without legal cause and was unreasonable.

136.    By reason of the conduct of the individual Defendants, Mary Jahn, Mark Dovin, and Tom Dibiase as aforesaid in their unjustified, unwarranted and unreasonable seizure of Plaintiff's person and arrest of Plaintiff, Orangelo Payne was deprived of the rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. Therefore, Defendants, Mary Jahn, Mark Dovin, and Tom Dibiase are liable to Plaintiff pursuant to 42 U.S.C. section 1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against the Adult Probation Department Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.  Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against the municipal Defendants.

**COUNT V**
**42 U.S.C. § 1983 - UNREASONABLE SEIZURE OF PLAINTIFF 'S PERSON**
**Plaintiff v. Chicago Police Department Defendants**

137.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 137 of Count V, as though set forth verbatim herein.

138.    The Defendant City of Chicago, through the establishment of the Chicago Police Department, and as a policymaker for the Chicago Police Department, adopted and/or put into effect policies, procedures and/or de facto customs which were in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their person, which policies, procedures and/or de facto customs, were in force and in effect on April 21, 2013.

139.    Chicago Police Officers are not authorized to perform searches of probationers' persons without a warrant.  A Probation Officer may only request the presence of a law enforcement officer for security purposes; such law enforcement officer's role is limited to "standby".   The individual Chicago Police Officers were not authorized to arrest and/or to order or perform a warrantless search of Orangelo Payne's person.

140.    The Chicago Police Department Officers were not authorized to restrain Orangelo Payne by handcuffing him as the Officers lacked any probable cause or reasonable suspicion necessary to justify the arrest/restraint.  The Chicago Police Department's use of force in restraining and arresting Orangelo Payne constituted an illegal seizure/arrest.

141.    The Chicago Police Department's seizure and arrest was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth Amendment Rights.

142.    The actions of the Chicago Police Department were done pursuant to one or more *de facto* policies, practices and/or customs of the Chicago Police Department as outlined above in Paragraphs 83 through 104.

143.    The aforementioned policies, practices, and customs of the City of Chicago, through the Chicago Police Defendants, are a proximate cause of the injury to the Plaintiff and to the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

144.    The aforementioned policies, practices, and customs of the Chicago Police Department Defendants were maintained and implemented with deliberate indifference and have encouraged the Chicago Police Department Defendants to commit wrongful acts against the Plaintiff , and therefore are a proximate cause of the injury to the Plaintiff  and to the deprivation of the Plaintiff 's constitutionally protected rights.

145.    The seizure of Plaintiff's person and arrest of Plaintiff Orangelo Payne was caused by the Chicago Police Department; specifically, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin and was done without legal cause and was unreasonable.

146.    By reason of the conduct of the individual Defendants, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin as aforesaid in their unjustified, unwarranted and unreasonable seizure of Plaintiff 's person and arrest of Plaintiff , Orangelo

Payne was deprived of the rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. Therefore, Defendants, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin are liable to Plaintiff pursuant to 42 U.S.C. section 1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against the Chicago Police Department Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action. Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against the municipal Defendants.

<u>**COUNT VI**</u>
<u>**FOURTH AMENDMENT - UNREASONABLE SEIZURE OF PLAINTIFF'S PERSON**</u>
<u>**Plaintiff v. FBI Special Agent Christopher G. Weismantel**</u>

147.     Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 147 of Count VI, as though set forth verbatim herein.

148.     FBI Agents are not authorized to perform searches of probationers' homes. A Probation Officer may only request the presence of a law enforcement officer for security purposes; such law enforcement officer's role is limited to "standby". FBI Agent Christopher G. Weismantel was not authorized to order or perform a warrantless search/seizure of Orangelo Payne's person.

149.     Upon opening the door, Orangelo Payne did not pose an immediate danger of serious bodily harm to either himself, to any Probation Officers, or to FBI Agent Christopher G. Weismantel. As such, Christopher G. Weismantel was not authorized to perform any search or seizure of Orangelo Payne.

150.     FBI Agent Weismantal possessed no reasonable suspicion that Payne had

committed any crime.

151.    FBI Agent Weismantel knew that Payne's probation contract required that any Officer possess reasonable suspicion that the probationer had committed a crime before performing any search of a probationer's person.

152.    Moreover, FBI Agent Weismantal exceeded the scope of his authority by ordering the Probation Officers to arrest Orangelo Payne by handcuffing him.  FBI Agent Weismantal had no authority to be present during the compliance/curfew check.  FBI Agent Weismantal lacked any probable cause or reasonable suspicion necessary to justify ordering the arrest/restraint.

153.    After Payne was restrained/arrested, FBI Agent Weismantel then exceeded the scope of his authority by then interrogating Payne on matters unrelated to his curfew, specifically, his knowledge regarding a federal suspect known as "Poe."  At all times during FBI Agent Weismantel's interrogation, Plaintiff was detained and was not at liberty to leave the encounter with FBI Agent Weismantel.

154.    FBI Agent Weismantel directed the Probation Officers' arrest of Payne.

155.    Agent Christopher G. Weismantel' s seizure/arrest was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff 's Fourth and Fourteenth Amendment Rights.

156.    The aforementioned policies, practices, and customs were maintained and implemented with deliberate indifference and have encouraged FBI Agents, including Agent Christopher G. Weismantel to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff and to the deprivation of the Plaintiff 's constitutionally protected rights.

157. The seizure of Plaintiff's person and arrest of Plaintiff Orangelo Payne, was caused by the Federal Bureau of Investigations; specifically, Agent Christopher G. Weismantel and was done without legal cause and was unreasonable.

158. By reason of the conduct of the individual Defendant, Agent Christopher G. Weismantel, as aforesaid in his unjustified, unwarranted and unreasonable seizure of Plaintiff 's person and arrest of Plaintiff Orangelo Payne was deprived of the rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. Therefore, Defendant Agent Christopher G. Weismantel is liable to Plaintiff.

159. This action is brought pursuant to *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388 (1971).

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against FBI Agent Christopher G. Weismantel and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action. Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief.

## COUNT VII
## 42 U.S.C. § 1983 - UNREASONABLE SEARCH OF PLAINTIFF 'S RESIDENCE
### Plaintiff v. Adult Probation Department Defendants

160. Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 160 of Count VII, as though set forth verbatim herein.

161. The Defendant Circuit Court of Cook County, through the establishment of the Adult Probation Department, and as a policymaker for the Adult Probation Department, in conjunction with Defendant Jesus Reyes, also a policymaker for the Adult Probation Department, promulgated, adopted and/or put into effect policies, procedures and/or de facto

customs which were in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their property, which policies, procedures and/or de facto customs, were in force and in effect on April 21, 2013.

162.    Upon opening the door, Orangelo Payne did not pose an immediate danger of serious bodily harm to either himself or to the Probation Officers.    As such, the Probation Officers were not authorized to perform any search of Orangelo Payne nor were they authorized to restrain Orangelo Payne.  Nevertheless, the Adult Probation Officers immediately seized Plaintiff Orangelo Payne, thereby arresting him at the time Plaintiff Orangelo Payne opened the door.

163.    Moreover, the Probation Officers were not authorized to restrain Orangelo Payne by handcuffing him as the Officers lacked any probable cause or reasonable suspicion necessary to justify the arrest/restraint.  The Probation Officers were present at Payne's home merely to perform a curfew check; as such, after Orangelo Payne opened the door, verifying he was in fact home, the Probation Officers should have then left.  There use of force in restraining and arresting Orangelo Payne was excessive as no force was necessary or authorized.

164.    Moreover, the Probation Officers were not authorized to search Orangelo Payne's home as the Officers lacked any probable cause or reasonable suspicion necessary to justify both the arrest/restraint of Orangelo Payne and the search of his home.  The Probation Officers were present at Payne's home merely to perform a curfew check; as such, after Orangelo Payne opened the door, verifying he was in fact home, the Probation Officers should have then left.

165.    The Adult Probation Department's search of Plaintiff Orangelo's home, including but not limited to the back bedroom where the shotgun was discovered, was not within

38

Orangelo's immediate presence and therefore such search was not necessary to protect the Probation Officers from danger.

166.    The Adult Probation Department's search of Orangelo Payne's home was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth Amendment Rights.

167.    The actions of the Adult Probation Department were done pursuant to one or more *de facto* policies, practices and/or customs of the Adult Probation Department as outlined above in Paragraphs 83 through 104.

168.    The aforementioned policies, practices, and customs of the Adult Probation Department Defendants are a proximate cause of the injury to the Plaintiff to the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

169.    The aforementioned policies, practices, and customs of the Adult Probation Department Defendants were maintained and implemented with deliberate indifference and have encouraged the Adult Probation Officer Defendants to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff and to the deprivation of the Plaintiff 's constitutionally protected rights.

170.    The search of Plaintiff's person and home was caused by the Adult Probation Department Defendants; specifically, Mary Jahn, Mark Dovin, and Tom Dibiase and was done without legal cause and was unreasonable.

171.    By reason of the conduct of the individual Defendants, Mary Jahn, Mark Dovin, and Tom Dibiase as aforesaid in their unjustified, unwarranted and unreasonable search of Plaintiff 's home, Orangelo Payne was deprived of the rights, privileges and immunities secured

to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. Therefore, Defendants, Mary Jahn, Mark Dovin, and Tom Dibiase are liable to Plaintiff pursuant to 42 U.S.C. section 1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against the Adult Probation Department Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action. Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against the municipal Defendants.

### COUNT VIII
### 42 U.S.C. § 1983 - UNREASONABLE SEARCH OF PLAINTIFF 'S RESIDENCE
### Plaintiff v. Chicago Police Department Defendants

172. Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 172 of Count VIII, as though set forth verbatim herein.

173. The Defendant City of Chicago, through the establishment of the Chicago Police Department, and as a policymaker for the Chicago Police Department, adopted and/or put into effect policies, procedures and/or de facto customs which were in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their property, which policies, procedures and/or de facto customs, were in force and in effect on April 21, 2013.

174. Chicago Police Officers are not authorized to perform searches of probationers' homes without a warrant. A Probation Officer may only request the presence of a law enforcement officer for security purposes; such law enforcement officer's role is limited to "standby". The individual Chicago Police Officers were not authorized to perform a warrantless search Orangelo Payne's home.

175. The Chicago Police Department Officers were not authorized to search Orangelo

Payne's home as the Officers lacked any probable cause or reasonable suspicion necessary to justify the arrest/restraint and subsequent search.

176.    The Chicago Police Department's search of Orangelo Payne's home was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth Amendment Rights.  The search of Orangelo Payne's home was without legal cause and constituted an illegal search.

177.    The actions of the Chicago Police Department were done pursuant to one or more *de facto* policies, practices and/or customs of the Chicago Police Department as outlined above in Paragraphs 83 through 104.

178.    The aforementioned policies, practices, and customs of the City of Chicago, through the Chicago Police Defendants are a proximate cause of the injury to the Plaintiff and to the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

179.    The aforementioned policies, practices, and customs of the Chicago Police Department Defendants were maintained and implemented with deliberate indifference and have encouraged the Chicago Police Department Defendants to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff and the deprivation of the Plaintiff 's constitutionally protected rights.

180.    The search of Plaintiff's home was caused by the Chicago Police Department; specifically, Officer Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin and was done without legal cause and was unreasonable.

181.    By reason of the conduct of the individual Defendants, Officer Angelo

Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams, Officer

BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin as aforesaid in their unjustified,

unwarranted and unreasonable search of Plaintiff 's home, Orangelo Payne was deprived of the

rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to

the United States Constitution and laws enacted thereunder. Therefore, Defendants, Officer

Angelo Panagiotopoulos, Officer Taylor, Officer John P. Kennedy, Officer Benny B. Williams,

Officer BJ Doherty, Officer Stevan Vidljinovic, and Officer Dorin are liable to Plaintiff pursuant

to 42 U.S.C. section 1983.

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against the

Chicago Police Department Defendants and that he be awarded compensatory and punitive

damages, reasonable attorney's fees, and the costs of this action.  Additionally, Plaintiff

Orangelo Payne prays for declaratory and injunctive relief against the municipal Defendants.

**COUNT IX**
**FOURTH AMENDMENT - UNREASONABLE SEARCH OF PLAINTIFF 'S**
**RESIDENCE**
**Plaintiff v. FBI Special Agent Christopher G. Weismantel**

182.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in

paragraphs 1 through 104 as paragraph 182 of Count IX, as though set forth verbatim herein.

183.    The Defendant Circuit Court of Cook County, through the establishment of the

Adult Probation Department, and as a policymaker for the Adult Probation Department, in

conjunction with Defendant Jesus Reyes, also a policymaker for the Adult Probation

Department, promulgated, adopted and/or put into effect policies, procedures and/or de facto

customs which were in direct violation of 42 USC §1983, and in direct contravention of the

constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable

and unlawful searches of their property, which policies, procedures and/or de facto customs,

42

were in force and in effect on April 21, 2013.

184.    FBI Agents and Chicago Police Officers are not authorized to perform searches of probationers' homes.  A Probation Officer may only request the presence of a law enforcement officer for security purposes; such law enforcement officer's role is limited to "standby".   FBI Agent Christopher G. Weismantel was not authorized to order or perform a warrantless search of Orangelo Payne's home.

185.    Upon opening the door, Orangelo Payne did not pose an immediate danger of serious bodily harm to either himself or to the Probation Officers.   As such, neither Agent Christopher G. Weismantel nor the Probation Officers were authorized to perform any search or seizure of Orangelo Payne's home.

186.    FBI Agent Weismantal possessed no reasonable suspicion that Payne had committed any crime.

187.    FBI Agent Weismantel knew that Payne's probation contract required that any Officer possess reasonable suspicion that the probationer had committed a crime before performing any search of a probationer's property.

188.    Payne never consented to a search of his property.

189.     FBI Agent Christopher G. Weismantel ordered an unlawful search of Orangelo Payne's home after Payne could not provide Weismantel with the information he needed regarding a wanted federal suspect known as "Poe."

190.    Agent Christopher G. Weismantel' s search of Plaintiff Orangelo Payne's home was without cause and was unnecessary and unreasonable and was therefore in violation of Plaintiff 's Fourth and Fourteenth Amendment Rights.

191.    The aforementioned policies, practices, and customs are a proximate cause of the

43

injury to the Plaintiff and to the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

192.    The aforementioned policies, practices, and customs were maintained and implemented with deliberate indifference and have encouraged FBI Agents, including Agent Christopher G. Weismantel to commit wrongful acts against the Plaintiff, and therefore are a proximate cause of the injury to the Plaintiff  nd to the deprivation of the Plaintiff 's constitutionally protected rights.

193.    The search of Plaintiff's home was caused by the Federal Bureau of Investigations; specifically, Agent Christopher G. Weismantel and was done without legal cause and was unreasonable.

194.    By reason of the conduct of the individual Defendant, Agent Christopher G. Weismantel, as aforesaid in his unjustified, unwarranted and unreasonable search of Plaintiff 's home, Orangelo Payne was deprived of the rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. Therefore, Defendant Agent Christopher G. Weismantel is liable to Plaintiff.

195.    This action is brought pursuant to *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388 (1971).

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against FBI Agent Christopher G. Weismantel and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action.  Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief.

**COUNT X**
**42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**
**Plaintiff v. All Defendants**

196.    Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in

paragraphs 1 through 104 as paragraph 196 of Count X, as though set forth verbatim herein.

197.    The Adult Probation Department Defendants, the Chicago Police Department

Defendants, and Federal Bureau of Investigations; specifically, FBI Agent Christopher G.

Weismantel acted jointly in concert, as co-conspirators, to create and effectuate the policies

outline in paragraphs 83 through 104 above, which resulted in Defendants performing illegal

searches, seizures, and interrogations of probationers, including Plaintiff Orangelo Payne.

198.    Specifically, the seizure of Orangelo Payne, the search of his home, the

interrogation of Orangelo Payne, and the incarceration of Orangelo Payne were all performed in

furtherance of a conspiracy by Defendants which deprived Plaintiff Orangelo Payne of his

constitutional rights, as outlined in the prior Counts of this Complaint.

199.    In so doing, Defendants, as co-conspirators, conspired to accomplish an unlawful

purpose by an unlawful means.  Defendants, with the same conspiratorial objective, engaged in

unlawful searches and seizures of probationers' persons and property, including Plaintiff

Orangelo Payne, with the objective of illegally obtaining evidence by depriving probationers' of

their constitutional Fourth and Fourteenth amendment rights to be free from unreasonable

searches and seizures.  In addition, these co-conspirators agreed among themselves to protect one

another from liability for depriving Plaintiff Orangelo Payne of these rights.

200.    In furtherance of their conspiracy, each of the Defendants, as co-conspirators,

committed overt acts and were otherwise willful participants in joint activity.

201. The misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the Plaintiff's constitutional rights.

202. Defendants' conspiracy was a proximate cause of the injury to the Plaintiff and caused the deprivation of the Plaintiff's constitutionally protected rights, under the Fourth and Fourteenth Amendments to the United States Constitution.

203. As a result of Defendants' misconduct and in furtherance of their conspiracy, Plaintiff Orangelo Payne suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set for above.

204. As to Defendant Agent Christopher G. Weismantel, this action is brought pursuant to *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388 (1971).

WHEREFORE, Plaintiff Orangelo Payne prays for judgment in his favor and against all Defendants and that he be awarded compensatory and punitive damages, reasonable attorney's fees, and the costs of this action. Additionally, Plaintiff Orangelo Payne prays for declaratory and injunctive relief against all Defendants.

**COUNT XI**
**State Law Claim – Civil Conspiracy to Deprive Constitutional Rights**
**Plaintiff v. All Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XII**
**State Law Claim - FALSE IMPRISONMENT/FALSE ARREST**
**Plaintiff v. Adult Probation Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XIII**
**State Law Claim - FALSE IMPRISONMENT/FALSE ARREST**
**Plaintiff v. Chicago Police Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XIV**
**State Law Claim - FALSE IMPRISONMENT/FALSE ARREST**
**Plaintiff v. FBI Special Agent Christopher G. Weismantel**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XV**
**State Law Claim – MALICIOUS PROSECUTION**
**Plaintiff v. Adult Probation Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XVI**
**State Law Claim – MALICIOUS PROSECUTION**
**Plaintiff v. Chicago Police Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XVII**
**State Law Claim – MALICIOUS PROSECUTION**
**Plaintiff v. FBI Special Agent Christopher G. Weismantel**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XVIII**
**State Law Claim – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff v. Adult Probation Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XVIX**
**State Law Claim – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff v. Chicago Police Department Defendants**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XX**
**State Law Claim – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff v. FBI Special Agent Christopher G. Weismantel**
**DISMISSED BY COURT ORDER ON 3/21/2013**

**COUNT XXI**
**State Law Claim – INDEMNIFICATION**
**Plaintiff v. The Adult Probation Department Defendants**

205.     Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 205 of Count XXI, as though set forth verbatim herein.

206.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

207.     The Adult Probation Department Defendants were employees, members, and agents of the Circuit Court of Cook County and the County of Cook, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

208.     Cook County is obligated by Illinois statute to pay judgment entered against any of the Adult Probation Department Defendants in their official capacity.

**COUNT XXII**
**State Law Claim – INDEMNIFICATION**
**Plaintiff v. The Chicago Police Department Defendants**

209.     Plaintiff , Orangelo Payne, repeats and realleges the allegations contained in paragraphs 1 through 104 as paragraph 209 of Count XXII, as though set forth verbatim herein.

210.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

211.     The Chicago Police Department Defendants were employees, members, and agents of the Chicago Police Department and the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

212.     The City of Chicago is obligated by Illinois statute to pay judgment entered

against any of the Chicago Police Department Defendants in their official capacity.

## JURY DEMAND

Plaintiff  Orangelo Payne, hereby demands a trial by jury pursuant to Federal Rule of

Civil Procedure 38(b) on all triable issues.

s/Eileen M. O'Connor
Eileen M. O'Connor

Eileen M. O'Connor,  #6290372
O'CONNOR LAW GROUP LLC
Attorney for Plaintiff
140 S. Dearborn, Suite 320
Chicago, IL 60603
Phone: (312) 236-1814
Facsimile: (312) 580-5479
Email  eoc@oconnorlawgrp.com